### UNITED STATES v. SUTHERLAND.

#### (District Court, W. D. Virginia. May 2, 1914.)

CRIMINAL LAW (§ 101\*)—FEDERAL COURTS—DIVISIONS OF DISTRICTS—TRANSFER OF CRIMINAL CASES.

> The provision of Judicial Code (Act March 3, 1911, c. 231, § 53, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]), that "when a judicial district contains more than one division * * * all prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district," applies only to districts having statutory divisions; and in a district having no such divisions, but which, on account of there being different places fixed for holding court, the court has by rule divided into so-called divisions for convenience in drawing juries, etc., the court has discretionary power to transfer a criminal cause from one place of holding court to another without the consent of the defendant.

> [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 199–205; Dec. Dig. § 101.\*]

Criminal prosecution by the United States against one Sutherland.

Barnes Gillespie, U. S. Atty., of Tazewell, Va.

S. H. Sutherland, of Clintwood, Va., for defendant.

McDOWELL, District Judge. This was a prosecution under section 5209, Rev. Stat. (U. S. Comp. St. 1901, p. 3497), for a violation committed in Dickenson county, Va. A mistrial was had at the August term of the court at Big Stone Gap. Upon withdrawing a juror, on the motion of the government and over the objection of the defendant, the case was ordered transferred to Abingdon for trial at the succeeding October term. The reasons for making the transfer need not be stated at great length. It developed during the trial that there was at Big Stone Gap among sundry of the citizens a strong sentiment in favor of the acquittal of the defendant, which most probably aided no little in bringing about the disagreement of the jury, and it was there at that time impracticable to secure fit accommodations for keeping a jury under charge. Leaving the case at Big Stone Gap would also have resulted in delay until the following January term. The desire of the district attorney for a speedy retrial was in my opinion based on most meritorious grounds, while defendant's objection to the motion was based on grounds of the opposite character. It should be added that Abingdon was practically as convenient of access to the defendant and his witnesses as Big Stone Gap.

The defendant's counsel relied upon section 53 of the Judicial Code. That section reads in part:

"When a district contains more than one division. * * * All prosecutions for crimes or offenses shall be had within the division of such districts

---

where the same were committed, unless [transferred on motion of the defendant]."

In this district there are no divisions created by act of Congress, and there has never been any special statute applicable to this district with reference to the place of trial. The rules of this court create territorial subdivisions of the district, which are therein called divisions, and the offense was committed within the Big Stone Gap "division." While section 53 Jud. Code (see, also, section 58) may seem literally to apply to this district, I cannot perceive that it can be so construed.

In the edition of the Judicial Code prepared under direction of the Senate Judiciary Committee under resolution of February 18, 1913, there is a note appended to section 53:

"In a great many *acts creating divisions* of districts there are to be found provisions requiring, etc. * * * To avoid the necessity for repeating them in the various sections in which they otherwise would appear, and to avoid the necessity for *repeating* similar provisions *in future acts creating or changing divisions* or districts, this section has been inserted and made general. The section also contains the restriction with respect to the place of prosecution of crimes and offenses found in many acts; and the provision of the act of June 2, 1906 (34 Stats. 206, c. 2569), authorizing the transfer of certain criminal cases from one division of the Western district of Arkansas to another division, for trial etc., is also carried into the section and made general in its application. The purpose of this latter provision is to facilitate the early disposition of criminal cases, especially in minor cases, where the defendant is unable to give bail, and may, in view of the fact that in many divisions but one term of court is held each year, possibly be compelled to remain in jail nearly a year before a trial may be had or before an opportunity, will present itself for him to plead guilty."

There have been many statutes creating divisions of districts. See, for instance, 4 Fed. Stats. Ann. 635, 667, 699, 702, 704, 705, 706, 711, 712, 713, 714, 725. In many of these statutes there are provisions fixing the place for certain trials. In some the provisions relate to criminal trials, for instance, Act March 2, 1887, c. 315, 24 Stat. 442, 443 (U. S. Comp. St. 1901, p. 345); Act March 3, 1891, c. 566, 26 Stat. 1110 (U. S. Comp. St. 1901, p. 338); Act Feb. 20, 1897, c. 269, 29 Stat. 592 (U. S. Comp. St. 1901, p. 322); Act May 29, 1900, c. 594, 31 Stat. 220 (U. S. Comp. St. 1901, p. 326); Act June 1, 1900, c. 601, 31 Stat. 249 (U. S. Comp. St. 1901, p. 353); Act June 2, 1906, c. 2569, 34 Stat. 207.

It is a mere accident of phraseology that there are any "divisions" eo nomine in this district, "sections" or "departments" would have answered equally well. A rule of court promulgated in 1907 reads:

"For purposes of convenience the Western District of Virginia is hereby divided into divisions, to be known as follows and to consist of the territory hereinbelow named," etc.

The purposes of the rule were to be conveniently able to specify from what counties and cities the jurors for the respective places of session were to be drawn, and to conveniently phrase the rules guiding the United States commissioners as to the places of session to which they should bail defendants and recognize witnesses. If in writing the rules of court it had been said that juries for service at Abingdon shall be drawn from Washington county and (by name) the other counties styled the "Abingdon division" in the rules, etc., and that the Unit-

ed States commissioners shall bail defendants and recognize witnesses to the then next term of this court to be held at the place of session nearest to place of the offense, it would have been difficult, if not impossible, to assert that there are "divisions" in this district. That the application to this district of this act of Congress should depend upon the fortuitous choice of words in the rules of this court seems to me highly improbable.

In districts in which there are no divisions created by act of Congress, there was, at least prior to the enactment of the Judicial Code, a common-law power to do what was done in the case at bar—to make transfers in clear furtherance of justice although objected to by one party. Such power has been exercised in this district as far back as my own knowledge takes me without question ever having been made. In removals, under section 643, Rev. Stats. (U. S. Comp. St. 1901, p. 521), from the state courts of prosecutions against federal revenue officials, the removal had to be to the place of session of the federal court where a court was "next to be holden," anywhere in this district. In removals under the Judiciary Act of 1875 (Act March 3, 1875, 18 Stat. 470, c. 137); 1887 (Act March 3, 1887, 24 Stat. 552, c. 373); 1888 (Act Aug. 13, 1888, 25 Stat. 433, c. 866 [U. S. Comp. St. 1901, p. 508]), the place of session of the federal court at which the copy of the state court record was regularly to be filed was that at which the federal court of the district was *next* to have a session anywhere in this district. In either class of removals the place of session to which a case was carried by removal was not infrequently inconvenient and unduly expensive to one party, or caused delay in trial, to the unjust detriment of one party, and to the unfair advantage of the other. Under such circumstances, without consent of both parties, the power to transfer to another place of session is assuredly a power in the furtherance of justice. That this common-law power existed, at least prior to the Judicial Code, see Barrett v. U. S., 169 U. S. 218, 221, 18 Sup. Ct. 327, 329 (42 L. Ed. 723) in which it is said:

"As to where trials shall be had in a judicial district depends entirely on the legislation upon the subject."

In Rosencrans v. U. S., 165 U. S. 257, 260, 263, 17 Sup. Ct. 302, 304 (41 L. Ed. 708) it is said:

"These statutes declare the general rule, that jurisdiction is coextensive with district. That being the general rule, no mere multiplication of places at which courts are to be held or mere creation of divisions nullifies it. Indeed, the place of trial has no necessary connection with the matter of territorial jurisdiction. * * * So far as the mere transfer of the place of trial from one division to another, it would seem, in the absence of express prohibition, to be within the competency of the court having full jurisdiction over the entire district, and certainly presents no ground of error when it is not at the time challenged, and the trial proceeds without objection."

In Terry v. Skinner (C. C.) 110 Fed. 494, 495, it is said:

"The motions under consideration are governed by the rules of court in force in this district since 1886. Rule 20 is: 'Upon the affidavit on the part of a plaintiff or defendant, showing good cause, a judge may remove a cause from one place of holding court to another.' Hence the question where a cause shall be heard is one addressed to the discretion of the judge."

A transfer from one place of session to another within the district is not a change of venue, and we need not consider the possibly debatable question of discretion in the court to order a change of venue in criminal cases on motion of the prosecution and over objection of the defendant. 12 Cyc. 242, 243. It seems clear, therefore, that there was a common-law discretionary power in the court of this district to order the transfer against the objection of the defendant. If so, and if section 53 be construed to apply to districts which have no statutory divisions, this statute is in derogation of this common-law power. In Northern Securities Co. v. U. S., 193 U. S. 197, 361, 24 Sup. Ct. 436, 466 (48 L. Ed. 679) it is said:

"Whenever a departure from common-law rules * * * is claimed, the purpose to make such departure should be *clearly* shown."

In Johnson v. Railroad Co., 117 Fed. 462, 466, 54 C. C. A. 508, 512, it is said:

"The common or general law is not further abrogated by such a statute than the clear import of its language *necessarily requires.*"

See, also, 26 Am. & Eng. Ency. (2d Ed.) 662; Shaw v. R. Co., 101 U. S. 557, 565, 25 L. Ed. 892; Chauncey v. Dyke, 119 Fed. 1, 17, 55 C. C. A. 579, 595.

If the language of section 53, read in connection with other sections of the Code, can possibly be read as applying to divisions of both kinds, it must be admitted that it can also be fairly read as applying only to statutory divisions. To adopt the former construction over the latter, we destroy a common-law power, although the language used does not fairly, clearly, or necessarily require such construction. If the purpose of the provision in question was to prevent delay, it defeats that purpose in part to read it as applying to the districts having no statutory divisions. This is well illustrated by the instant case. The defendant relied upon this section, construed as applying to this district, largely for the very purpose of obtaining delay.

Section 53 applies to civil as well as to criminal cases. If confined in its application to districts in which by previous acts of Congress divisions were in effect made judicial districts, we find excellant reason for enacting this section; but if applied to this district, for instance, little but evil can result. Transfers of civil cases originally brought in this court, at the instance of one and over the objection of the other party, have been made in this district for many years—and always in order to prevent oppressive delay or considerable expense or serious inconvenience to the party moving for the transfer. An intent to cause public inconvenience is certainly not to be construed into a statute when not clearly necessary. Construing this section as applying to districts such as this does cause public inconvenience, and without any compensating benefit. I have never heard that the power of transfer has been generally or frequently abused by the federal courts which have heretofore had it.

The chief reason for the enactment of the statutes dividing districts into divisions and making the divisions practically judicial districts was the public inconvenience caused by the great territory embraced

within some districts, which was also in many cases coupled with inadequate means of travel. In some of the larger Western states there was all-sufficient reason for requiring that a single defendant in a civil suit could be sued only within the division of his residence. In this district, and in many others of not such very great area and well supplied with convenient means of travel, there is no reason for such requirement, and there are some very strong reasons against it. U. S. v. Fisher, 2 Cranch, 359, 2 L. Ed. 304.

While it seems to me that Judge Sanford's opinion in Reich v. Tenn. Co. (D. C.) 209 Fed. 880, has no bearing on this question, it should be noticed that there are statutory divisions of the Eastern district of Tennessee. 4 Fed. Stats. Ann. 725.

Another, and I think controlling, reason for holding that this statute applies only to districts having statutory divisions is this: In many of the statutes which created divisions of districts are provisions which do make, or which were construed as making, the place of trial in a division the only place at which certain trials could be held. Act Feb. 20, 1897, 29 Stat. 590, 592, relating to both districts in Arkansas, created divisions and provided:

"That all crimes or offenses committed * * * in any of the divisions of the said districts shall be cognizable within such division."

In 24 Stat. 442, it is provided:

"That all * * * criminal prosecutions must be brought in the division * * * where * * * the offense is committed."

See, for instance, also, of similar purport, 26 Stat. 1110, § 3; 31 Stat. 249, § 3. The result was that a defendant in a criminal case, unable to give bail, could not on his own motion be tried, or even be allowed to plead guilty, until a term of court for his division was held. This occasionally operated to keep defendants in jail longer before trial than they could be kept after trial, if found guilty. This wretched hardship, due entirely to slipshod legislation, was in Arkansas corrected by section 2 of the act of June 2, 1906 (34 Stat. 206, 207). And as is shown in the note appended to section 53, Jud. Code, the purpose was to correct the evil caused wholly by statutes creating divisions of districts and providing that jurisdiction to try certain cases is given to the court only when sitting within some particular division. In this district there has never been any such evil to be remedied. It has been, since long before I went on the bench, the constant practice to transfer prisoners from one division to another at their request, in order that they might plead guilty and spend the time in jail serving the sentence rather than in waiting to serve the sentence. In all reasonable probability, this practice does and always has prevailed in many, if not in all, of the districts where there are divisions created only by rule of court.

Truly Congress may have intended the statute to be general in its application to all districts having divisions created by statute, or at least to all districts having such divisions, where the division is by statute made in effect a judicial district. To construe it as applying to other districts is to wholly lose sight of the evil intended to be cured

and to create unnecessarily another evil almost equally pernicious. For if the power of transfer be taken away, except at the instance of the defendant, he is given an opportunity to delay trial that will frequently be used to defeat the ends of justice.

Almost equally persuasive is the language of section 59 of the Code:

"Wherever any *new district* or division has been or *shall be established*, or *any county* or territory has been or *shall be transferred from one district* or division *to another district* or division, prosecutions for crimes," etc.

Assuredly here it must be plain that the thought of the framers was fixed upon changes by act of Congress. The note to this section reads:

"This section is based upon provisions contained in a large number of *acts* creating new districts or divisions, or transferring counties from one district or division to another. The purpose of the section is to obviate the necessity for repeating, in similar acts in the future, provisions of this character."

If section 59 relates only to divisions created by act of Congress, I can think of no reason for asserting that section 53 relates to any other kind of divisions.

So also section 60 adds force to this belief:

"The transfer of any county * * * from one * * * division to another * * * division shall not affect or divest any lien," etc.

It seems incredible that Congress, in a statute of this character, could be solemnly legislating that a transfer of a county from a division created by order of court to another such division of a district should not divest liens. For the prototypes of this section, see Act Aug. 5, 1886, c. 928, § 6, 24 Stat. 308, 309 (U. S. Comp. St. 1901, p. 325), and Act March 2, 1901, c. 801, § 7, 31 Stat. 880, 881 (U. S. Comp. St. 1901, p. 407). By each a new judicial district was created, and in each there is a provision that liens shall not be impaired by the transfer of territory from the old to the new district.