## PATRICK JOBBING CO v. GLOBE & RUTGERS FIRE INS. CO., and seven other cases.

District Court, W. D. Virginia. July 5, 1927.

**1. Courts ⊜⇒527½—Law relative to transfer of causes to different division of district held inapplicable where divisions were created by rule of court (Judicial Code [28 USCA §§ 114, 119, 121, 122, 142, 144, 145, 150–152, 156, 157, 159, 168–171, 173, 180, 181, 187–190, 193]).**

Judicial Code, §§ 53, 58, 59, 60 (28 USCA §§ 114, 119, 121, 122) relative to transfer of causes to another division within district *held* inapplicable in case of transfer within district wherein divisions were created by rule of court, particularly in view of inference arising from fact that §§ 70, 71, 72, 77, 78, 79, 81, 82, 84, 88, 89, 90, 91, 93, 99, 100, 106, 107, 108, 109, 112 (28 USCA §§ 142, 144, 145, 150–152, 156, 157, 159, 168–171, 173, 180, 181, 187–190, 193) were intended to be governed in respect to venue of proceeding in districts mentioned respectively in such sections by §§ 53 and 58.

**2. Courts ⊜⇒527½—Civil transitory action removed by nonresident defendant may be transferred to another division created by rule of court within district (Judicial Code, § 29 [28 USCA § 72]).**

Federal court, in district having divisions created by rule of court, has judicial discretion to transfer civil transitory action removed by nonresident defendant on ground of diversity of citizenship to some other place of session within district, notwithstanding Judicial Code, § 29 (28 USCA § 72).

**3. Removal of causes ⊝∞111—Federal court did not abuse discretion in transferring cause removed from state court after continuance and inability to hold court because of sickness.**

Where federal court after removal of cause by nonresident defendant after continuing cause on defendant's motion was at next term unable to hold court because of sickness, there was no abuse of discretion in transferring cause to another division created by rule of court within district.

At Law. Actions by the Patrick Jobbing Company against the Globe & Rutgers Fire Insurance Company, against the Atlas Assurance Company, Limited, of London, England, against the Importers & Exporters Insurance Company of New York, against the Milwaukee Mechanics' Insurance Company of Milwaukee, Wis., against the Connecticut Fire Insurance Company of Hartford, Conn., against the Royal Insurance Company, Limited, of Liverpool, England, against the British-American Assurance Company of Toronto, Canada, and against the Ætna Assurance Company of Hartford, Conn., removed from state court. Causes ordered transferred for trial.

Hooker, Hooker & Sanford and W. L. Joyce, all of Stuart, Va., and Aiken & Benton, of Danville, Va., for plaintiff.

Sands, Williams & Lightfoot and Leake & Buford, all of Richmond, Va., Carter & Talbott, of Danville, Va., and F. P. Burton, of Stuart, Va., for defendants.

McDOWELL, District Judge. On February 17, 1926, the plaintiff, a Virginia Corporation having its only place of business at Stuart, Patrick county, Va., which is in this federal judicial district, instituted in the circuit court of Patrick county seven actions against seven nonresident insurance companies, based on different fire insurance policies. On or shortly before June 11, 1926, another similar action was commenced in the same court against another nonresident insurance company. All of these actions grew out of one fire. The first seven actions were removed to this court at Danville, Va., by order of the Patrick circuit court, on March 5, 1926. The eighth action was by similar order removed to this court at Danville on June 11, 1926. All of the removals were based only on diversity of citizenship.

The terms of the federal District Court of this district at Danville commence on the first Mondays in March and on the second Mondays in September. 43 Stats. 114. At the September, 1926, term these causes were consolidated, and for reasons appearing to be sufficient to the court the consolidated cause was, on the motion of the defendants, then continued. At the time for holding the March, 1927, term at Danville, I was sick and unable to hold the court, and the services of another judge could not be secured. On April 14, 1927, the plaintiff moved that the cause be transferred to Roanoke for trial in June of this year. The defendants objected; but over the objection of the defendants I made the order of transfer to Roanoke on April 23, 1927, and have advised counsel that the case will not be called for trial before June 27th next.

There are divisions of this district, made by rule of court, and Patrick county is in the Danville division. Roanoke is in an adjoining division. Stuart, the county seat of Patrick county, is 19 miles further by rail from Roanoke than from Danville. The difference in the distances by automobile from Stuart to Danville and from Stuart to Roanoke I understand to be practically the same as by rail.

[1] The chief, if not the only, reliance of counsel for the defendants in support of their objection to the order of transfer is placed on sections 53 and 58, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1087, 1101, 1103; U. S. Code, tit. 28, §§ 114, 119 [28 USCA §§ 114, 119]). Section 53, so far as is now material, reads:

"Sec. 53. When a district contains more than one division, every suit not of a local nature against a single defendant must be brought in the division where he resides; but if there are two or more defendants residing in different divisions of the district it may be brought in either division. * * * All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district. * * * In all cases of the removal of suits from the courts of a state to the District Court of the United States such removal shall be to the United States District Court in the division in which the county is situated from which the removal is made; and the time within which the removal shall be perfected, in so far as it refers to or is regulated by the terms of United States courts, shall be deemed to refer to the terms of the United States District Court in such division."

Section 58, Judicial Code, reads, so far as seems material:

"Sec. 58. Any civil cause, at law or in

equity, may, on written stipulation of the parties or of their attorneys of record * * * and on the written order of the judge * * * in vacation or * * * in term be transferred to the court of any other division of the same district, without regard to the residence of the defendants, for trial. * * * "

Recently I have been told, and I think it is true, that a number of the members of the bar of this district are of opinion that sections 53 and 58 of the Judicial Code were intended to apply in all districts containing divisions of any kind. There are I believe, aside from the literal reading of sections 53 and 58, four principal reasons for the above-mentioned belief:

In an edition of the Judicial Code, prepared in 1913 by the Senate judiciary committee, are explanatory notes. In these notes sections 53 and 58, inter alia, are said to have been intended to be of "general application." In Rose's Federal Jurisdiction and Procedure (3d Ed.) § 312, and (2d Ed.) § 282, is a paragraph which it seems is read as indicating that Judge Rose was of opinion that the two sections in question apply to all districts having divisions. Again, the opinion in Salinger v. Loisel, 265 U. S. 224, 236, 237, 44 S. Ct. 519, 68 L. Ed. 989, or rather a single sentence of the opinion on page 237, is it seems understood as indicating that section 53 applies to all districts having divisions of any kind. And finally it is argued that a judicial district of such territorial extent as to justify divisions, although created by rule of court, is within both the letter and the purpose of sections 53 and 58.

In respect to the notes above mentioned, to which should be added those prefacing chapter 5 of the Code, it should be said that the expression "general in application" could have been used in a limited, rather than in an unlimited, sense. To me these notes express only an opinion to the effect that sections 53 and 58 were intended to take the place of a number of earlier special judiciary acts, in each of which the divisions of a certain district therein named were in effect made judicial districts.

The section in Judge Rose's book above mentioned could possibly be understood as implying a belief on his part that sections 53 and 58 apply to all districts containing divisions; but it could at least equally as well be read as a bare statement of the purport of these two sections, made without thought of the different kinds of divisions. And such is, I think, its true construction.

In the Salinger Case the question before the court was as to the validity of an indictment returned in the Western division of the district of South Dakota, charging an offense as committed in the Southern division. At the time the Judicial Code was enacted there was in force a special statute relating to the district of South Dakota, which at least indicated that prosecutions for crime were triable only in the division in which the offense was committed. See Act Feb. 27, 1890, c. 21 (26 Stat. 14 [28 USCA § 187]). See, also, Act Feb. 22, 1889, c. 180, § 21 (25 Stat. 676, 682 [Comp. St. § 1358]). To my mind this opinion can have no relation to this district. For there has never been a special statute relating to this district which has so much as mentioned either venue or divisions. In the opinion (page 236 [44 S. Ct. 523]) it is said: "Formerly special statutes applicable to particular districts indicated the division in which criminal proceedings should be had, but the statutes were not uniform. * * * The general provision in section 53 here relied on superseded the special statutes."

It is true that this district is large enough to have made it judicious to subdivide it by rule of court; but it has never been considered large enough to justify the enactment of a special venue statute. And this fact affords strong reason for believing that this district, while within the letter, is not within the purpose, of the sections of the Code in question.

Section 53 applies to four classes of judicial proceedings: (a) Original civil suits, not of a local nature, against a single resident defendant. (b) Original civil suits, not of a local nature, against two or more defendants, residing in different divisions of the district of suit. (c) All prosecutions for offenses. (d) Civil suits removed from a state court.

When the Judicial Code was being drafted, there were a number of judicial districts in which special statutes had created divisions, and in respect to which the same or other special statutes declared, or indicated, that some or all of the above-mentioned classes of proceedings should be tried in a designated division of a particular district. A large number of these statutes can be found in 4 Federal Statutes Annotated (1st Ed.) pp. 625–663. Typical of many of these statutes is Act Feb. 12, 1909, c. 112, §§ 4, 5, 7 (35 Stat. 618) which read in part:

"Sec. 4. That all suits not of a local nature in said Circuit and District Courts against a single defendant, inhabitant of said State, must be brought in the division of the district in which he resides; but if there are

two or more defendants residing in different divisions of the district such suits may be brought in either division.

"Sec. 5. That all prosecutions for crimes or offenses hereafter committed in either of the divisions of said district shall be cognizable within such division."

"Sec. 7. That in all cases of removal of suits from the courts of the state of Tennessee to the courts of the United States, in the Middle district of Tennessee, such removal shall be to the United States courts in the division in which the county is situated from which the removal is made."

At the time the Code was enacted, there were also some districts containing no divisions of any kind. Classified, in accordance with the federal statutes in force when the Judicial Code was enacted, there were three classes of judicial districts: (1) Those having no divisions of any description. (2) Those in which subdivisions, perhaps called divisions, had been created by rule of court. (3) Those as to which special statutes declared the venue of certain classes of proceedings to be in a certain designated division.

So far as I know, it has never been true that the statute law antedating the Judicial Code in respect to any judicial district merely mentioned divisions or merely enumerated the counties composing the divisions; and this fact is worth mention, as it shows that when the Code was in preparation there were but two classes of districts containing divisions.

In 1914 the question now raised was presented in a criminal case in this district. In that case I transferred, over the timely objection of the defendant, a prosecution from the Big Stone Gap division (in which the offense had been committed) to the Abingdon division of this district. In an opinion in that case (U. S. v. Sutherland, 214 F. 320) I stated what I still think are sufficient reasons for construing sections 53 and 58 as having no application to judicial proceedings in this district. What follows is merely supplemental thereto:

The first mention made of divisions of districts to be found in the Judicial Code is in section 53. That section was therefore the proper place in which to make venue provisions for districts having divisions. But the divisions in mind, as I believe, were those which had in earlier special statutes been treated in effect as being judicial districts. In respect to districts containing this kind of divisions (class 3) it was judicious to provide a rule applicable to the entire class.

The same (local) reasons which had made the earlier special statutes desirable made section 53 a desirable rule for districts in class 3. But in respect to districts in class 2 there was no reason whatever for an intent to change the common law, by force of which transfers from one to another place of trial within a district could be made in the discretion of the court as might be necessary to avoid delay or unnecessary expense or inconvenience.

Beyond question there are two kinds of divisions of districts, and it follows that the word "division," as used in section 53, is, if it does not certainly refer only to statutory divisions, at the least of doubtful meaning. That prior to the Judicial Code this court, sitting at Roanoke, would have had the power to try this case, over the objection of the defendants, is not open to discussion. And if this power is held to have been taken away by section 53, the common law has been changed by construction of a statute of doubtful meaning. The language used by Judge (now Justice) Sanford in U. S. v. Southern Ry. Co. (D. C.) 285 F. 766, 767, adds no little weight to the argument against such construction of section 53.

Section 58 was not involved in the Sutherland Case; but it is intimately connected with section 53. Sections 54 to 57 (28 USCA §§ 115–118), inclusive, have no connection with divisions; but in sections 58, 59, and 60, the subject of divisions (both those that had been created by special statutes then in force and those that might be created by future special statute (28 USCA §§ 119, 121, 122) was certainly in mind. In respect to districts in class 3, section 58 was of value. In 1906 in the case of Ex parte Wisner, 203 U. S. 449, 460, 27 S. Ct. 150, 51 L. Ed. 264, the Supreme Court had ruled in effect that statutes, previously regarded as venue statutes, were jurisdictional statutes, and that consent of parties could not obviate the limitations on jurisdiction created by such statutes. The effect of this ruling was not entirely obviated until the Wisner Case was expressly overruled in 1923 in Lee v. Chesapeake & Ohio Ry., 260 U. S. 653, 659, 660, 43 S. Ct. 230, 67 L. Ed. 443.

In 1910 or 1911, when the Judicial Code was being prepared, the Wisner Case (notwithstanding In re Moore, 209 U. S. 490, 28 S. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164) was still causing rather widespread doubt as to the effect of consent of parties in districts in class 3. Because of this fact section 58 served a useful purpose in respect to such districts. But in respect to districts in class

2 there was no semblance of necessity for, or of utility in, section 58. And the foregoing facts not only show that section 58 was intended to apply only to districts in class 3, but tend to show that sections 53, 58, 59, and 60 were not intended to apply to any districts except those in class 3.

It may be added that section 58 could have no possible application to the case at bar, unless it be construed as impliedly forbidding transfers, except by consent (or waiver). The language of the section is permissive only, and this permission, while it could in 1911 have been thought by some people necessary, or at least judicious, in districts in class 3, must prior to the enactment of the Code have, been thought wholly useless by every one in respect to districts in class 2. When the Judicial Code was being written, nothing but a special judiciary act making divisions equivalent at least as to some classes of cases to districts could possibly have been thought by any one to create a need for a permissive provision, such as is section 58. From every aspect it seems necessary to say that section 58 was intended to apply only to districts in class 3, and that its congeners, sections 53, 59, and 60, were likewise intended to apply only to districts in class 3; for in fact sections 53 and 58 merely take the place of numerous antecedent special judiciary acts, and sections 59 and 60 merely make unnecessary future special provisions as to venue.

In conclusion, it is worth noting that in 21 sections of the Judicial Code (70, 71, 72, 77, 78, 79, 81, 82, 84, 88, 89, 90, 91, 93, 99, 100, 106, 107, 108, 109, 112 [28 USCA §§ 142, 144, 145, 150–152, 156, 157, 159, 168–171, 173, 180, 181, 187–190, 193]) the counties composing the divisions of the district or districts mentioned in each ·section are named. In the section of the Code (111 [28 USCA § 192]) relating to the two districts in Virginia there is no mention of divisions. The inference that the venue of proceedings in the districts mentioned respectively in the 21 sections was intended to be governed by sections 53 and 58 seems unavoidable; and the inference that the venue of proceedings in this district was not intended to be governed by sections 53 and 58 seems equally unavoidable. .

[2] If I am right in the belief that sections 53 and 58 have no application to this case, another question arises. When a civil transitory action has been removed by a nonresident defendant, solely on the ground of diversity of citizenship, in a district which has divisions, but which is not in class 3, has the federal court (on the motion of the plaintiff and over the objection of the defendant) a sound judicial discretion to transfer the cause to some other place of session within the district?

This case falls under section 29, Judicial Code (28 USCA § 72), and that section makes no express provision as to the place of session of the federal court to which removals shall be made. In such cases, section 29 by absence of express direction seems to give to the nonresident defendant the right, in the first instance, to elect the place of session which is best suited to his interests; but this section is equally silent as to a possible subsequent transfer. If we construe section 29 as denying to the court, in the exercise of a reasonable discretion, the power to transfer such cause, at the instance of the resident plaintiff and over the objection of. the nonresident defendant, the statute gives a power to the defendant which will frequently result in avoidable delay, and which can be so used as to put the resident plaintiff to much expense and inconvenience. It is so injudicious to give to defendants an arbitrary power of delay, and to give to any litigant an arbitrary power to oppress his opponent by putting him to unnecessary expense and unnecessary inconvenience, that I must think that section 29 was not intended to deny a discretionary power in the court to order a transfer in circumstances such as exist here.

[3] If there is such discretion, I think the bald facts of the case are sufficient to show that there was no abuse of discretion in ordering the transfer from Danville to Roanoke.