**Albert Gus HODGES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15152.**

United States Court of Appeals
Fifth Circuit.

June 2, 1955.

James H. Martin, Dallas, Tex., for appellant.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before BORAH and TUTTLE, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant was tried to the court without a jury and convicted of failure to pay the so-called "Gambler's Stamp Tax", as required by former Section 3290 [1] of the Internal Revenue Code. This Court was recently required to pass upon the sufficiency of the indictments and the evidence in three cases arising under the same statute [2] but the issues raised here were not directly presented in those cases.

The indictment here charged that appellant:

" * * * did engage in the business of receiving wagers, and that by reason of said occupation of accepting and receiving wagers he was an individual required by law, on or before November 13, 1953, to pay an occupational tax on wagering * * *; that on or about November 13, 1953, * * * the said Albert Gus Hodges did unlawfully fail to pay the said occupational tax on wagering * * *.

"In violation of Section 3294(a), Internal Revenue Code; 26, U.S.C., Section 3294(a)."

At the close of the evidence he argued, as he does here, that the Government had failed to prove that he was engaged in "the business of receiving wagers" and that there was a fatal variance between the allegations of the indictment and the proof. The trial judge rejected these arguments and found him guilty as charged, assessing a fine of $1,000.

Appellant, a disabled war veteran, had engaged in bookmaking in 1948, was arrested and received a suspended sentence upon his plea of guilty in State Court. Since that time he had been employed at his brother's newsstand in Dallas, and he denied having taken part in any bookmaking activities after his earlier arrest.

1. 65 Stat. 529; Title 26, U.S.C.: "A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

Section 3285, contained in subchapter A, imposed an excise tax upon wagers and in subsection (d) provided: "Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery."

2. Contreras v. United States, 5 Cir., 213 F.2d 96; Sulli v. United States, 5 Cir., 213 F.2d 100; Fernandez v. United States, 5 Cir., 213 F.2d 101.

The Government's evidence showed: that Louis King, a confessed "bookie", frequented the newsstand at which the appellant worked; that one Thompson was addicted to betting on football and baseball games and placed his bets with King; that King and Thompson met regularly at a Dallas hotel to transact their business, but later removed their rendezvous point to a cafeteria when "things got hot;" that a city detective appeared in the vicinity of the cafeteria and King requested Thompson to place his money and selections in an envelope and leave it with appellant. Revenue agents testified, and appellant admitted, that he received two such envelopes from Thompson and delivered them to King, and that he delivered "scratch sheets" from King to Thompson.

Appellant further admitted that, knowing the parties, he had a pretty good idea what was in the envelopes but he denied receiving compensation for his assistance. He stated he had merely been accommodating King and Thompson, and denied that he was in any way connected with King's bookmaking activities. Thompson, a Government witness, stated that so far as he knew appellant was not a part of King's operation; and King, testifying for appellant, flatly denied that appellant received anything in consideration for his assistance.

 Appellant's argument against the sufficiency of this evidence is based upon his interpretation of the statutes involved. He urges that the tax assessed by Section 3285 was due only from a person who was "engaged in the business" of accepting wagers, and that the Section 3290 tax was collectible only from one who was so engaged either for himself or for another. The two isolated events revealed here cannot, he urges, be accepted as proof that he was in the business.

This argument must fail, we think, because it does not take into consideration the differences in the wording of the two sections. Section 3285, which imposed the tax upon wagers, did make liable therefor only one who received wagers as a business or vocation. Such a person was liable for the special tax imposed by Section 3290, but the latter also applies against any person who "is engaged in receiving wagers for or on behalf of" one engaged in that business. The statute did not require that such a person be regularly "engaged" in receiving wagers for one in that business, or that he be so "engaged" for remuneration; it required only that he be "engaged". We are referred to no cases, and have found none which discuss or pass upon the meaning of the word "engaged" in Section 3290; nor do the committee reports or floor discussions in the Congress specifically mention that problem. We must, therefore, ascertain the Congressional intent from the wording of the statute itself.

The subchapter heading in the statute refers to the special tax as an "occupational tax"; and such a denomination lends support to the argument that the Congress contemplated its application only against one who received compensation or consideration for his receipt of wagers, even though he be not regularly employed. However, the difference in the wording of Section 3285 indicates clearly an intention to distinguish between those who are "in the business" and those who are merely assisting persons in the business. Section 3291 requires one in the business to register with the collector the names and addresses of all persons whom he uses to receive wagers. Therefore, we are of the opinion that in imposing taxes upon commercialized gambling,[3] the Congress intended that the

3. "Commercialized gambling holds the unique position of being a multi-billion-dollar, Nation-wide business that has remained comparatively free from taxation by either State or Federal Governments. This relative immunity from taxation has persisted in spite of the fact that wagering has many characteristics which make it particularly suitable as a subject for taxation. Your committee is convinced that the continuance of this immunity is inconsistent with the present need for increased revenue, especially at a time when many consumer items of a semi-necessity nature are being called upon to bear new or additional tax burdens."

"occupational" tax be paid not only by those operating such businesses, but also by anyone who knowingly received wagers on behalf of such persons. When appellant knowingly received Thompson's bets for King, he voluntarily became King's agent and placed himself within that class of persons against whom the Congress assessed the special tax.

In so holding, we are not unmindful of the possibility that overly zealous Revenue agents or prosecutors could conceivably attempt to rely upon this decision in an effort to hold liable for the special tax one who innocently serves as a "messenger" between the bettor and the "bookie". We are, therefore, constrained to emphasize our view that the evidence must clearly reveal circumstances which indicate beyond a reasonable doubt that the person receiving the wagers did so knowingly. We think the evidence summarized herein was sufficient to support, indeed, to require, the conclusion that appellant knew he was receiving wagers for a person in that business.

As previously stated, appellant also argued that he had been charged in the indictment with being in the business of accepting wagers whereas the proof failed completely to prove such facts and related only to the two isolated instances mentioned. Thus, he contends, he prepared to defend himself against one charge and has been convicted of another. The trial court took this argument under advisement, but after study, rejected it for the reason that the indictment specified the violation as being under Section 3294(a) [4] and that the provisions of that section clearly relate only to the special tax imposed by Section 3290. Hence, he reasoned that appellant "would be protected as against any double jeopardy, or in other words would have the benefit of res judicata when the

indictment here is appraised in the light of the testimony that was presented." He also ruled that it was obvious from the record that "everybody had in mind the occurrences that were developed here in evidence as being the things that were at issue." We think the trial judge was correct in his disposition of the argument. The offense charged was the failure to pay the tax which is specifically referred to in Section 3294(a). While the indictment was awkward and did charge appellant with being in the business, we think it adequately related the offense charged to the statutes involved and that the variance between the specific allegations and the proof was not fatal. Appellant apparently knew what acts the Government would contend subjected him to the tax, and his trial and conviction of the failure to pay the tax will prevent any subsequent prosecution based upon the same acts. We think the variance between the allegations and the evidence was not material and could not have been prejudicial to appellant. Rule 52(a) of Criminal Procedure, 18 U.S.C.A., United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Smiley v. United States, 9 Cir., 186 F.2d 903.

Affirmed.

TUTTLE, Circuit Judge, dissents.

TUTTLE, Circuit Judge (dissenting).

I respectfully dissent. After careful consideration of the indictment and proof in this case, I am persuaded that there was prejudicial error. The indictment charged that appellant:

" * * * did engage in the business of receiving wagers and that by reason of said occupation of accepting and receiving wagers he was an individual required by law, on or before November 13, 1953, to pay an

House Report No. 586, June 18, 1951, U. S. Code and Congressional Service, 82d Cong., 1st Sess., p. 1838; Senate Report No. 781, September 18, 1951, id., p. 2090.

4. "Any person who does any act which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000."

occupational tax on wagering \* \*; that on or about November 13, 1953, \* \* \* the said Albert Gus Hodges *did unlawfully fail to pay* the said occupational tax on wagering \* \* \*.

"In violation of Section 3294(a), Internal Revenue Code; 26, U.S.C., Section 3294(a)". (Emphasis added.)

This language differs substantially from the definition of the offense in § 3294(a). The indictment plainly alleges the failure to pay the tax as the gist of the offense, whereas § 3294(a) makes the doing of an act the gist of the offense.[1]

Moreover, the proof differed substantially from the indictment. It showed, not that Hodges was engaged in the business of accepting wagers as alleged, but at most that he was engaged in receiving wagers for or on behalf of King, who was engaged in the business.

Thus the indictment was technically defective and there was a technical variance from its allegations. The question which we are bound to consider is not whether there was proof that Hodges was guilty of a crime closely akin the one alleged, but for which he was not indicted; but indeed whether these errors were really prejudicial to Hodges.

Granted, then, that the evidence showed that Hodges received two wagers on behalf of a person liable for the tax upon engaging in the business of accepting wagers, without Hodges' first having paid the tax, that he was, thus, guilty of that offense, and that one alone: does the record show that he put up any kind of defense against that charge? Absolutely not. His entire defense was conducted on the premise that the allegations of the indictment had to be proved, and were that premise correct, he would prevail. Hodges' entire defense amounted to acknowledging the fact of having received wagers on behalf of King, without having paid the tax. In setting out earnestly to prove that he was not himself engaged in the business, Hodges put King on the stand and took the stand himself. Is this the way he would have defended himself if the indictment had charged the offense which it failed to allege, but of which the court now says he may stand convicted—by striving his utmost to establish it? I very much doubt it. No course could have been worse. If he had not taken the stand the jury might well have had some doubt as to his guilt; indeed, the court's opinion points to Hodges' admission on the stand that he had a pretty good idea what was in the envelopes, as helping appreciably to sustain the conviction. I cannot say that the defense undertaken, in view of the indictment's allegations, was not reasonable or proper on the part of Hodges' counsel; there is nothing in the record to indicate that either Hodges or his counsel was put on notice that he was being tried for any offense other than the one alleged in the indictment, or that the defense was adopted with any idea that it might be of no advantage or in fact disadvantageous to Hodges. In short, if the indictment had been drawn so as to charge the offense as it is defined in the statute and as the Government's proof could show, Hodges would unquestionably have conducted a better defense. In this state of affairs I cannot say that he was not prejudiced or that his defense was not hampered by the erroneous indictment and the variance in proof, taken together.

[1]. 26 U.S.C.A. § 3294(a):

"(a) Failure to pay tax.

"Any person who *does any act* which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000." (Emphasis added.)

I think much support for the proposition that the doing of the act is the gist of the offense is found in the recent Supreme Court cases of United States v. Kahriger, 345 U.S. 22, 32, 73 S.Ct. 510, 97 L.Ed. 754. and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415. These cases held that *no one is compelled* by the Act to pay the occupational tax and to register; consequently, the Act was held valid and not in conflict with the Fifth Amendment.

The majority believes that the gist of the offense in § 3294(a) is the failure to pay the tax. They do not deny that the text of that subsection unequivocally defines the offense as the doing of an act without previous payment of the tax; but take the position that the heading of that subsection, "Failure to pay tax" and the statements in the House and Senate Reports that "Special penalties are imposed for failure to pay the tax * * *," and the provisions of § 3294 as a whole show that this text is *erroneous* and that the gist of the offense is the failure to pay the tax. These would be persuasive considerations indeed except that it is settled beyond question (and in my opinion, the rule is based on sound policy) that resort may not be had to section headings or to legislative history, to change the unambiguous meaning of the text of a statute. To quote only a few recent authoritative pronouncements on this point:

"But headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. United States v. Fisher, 2 Cranch 358, 386, 2 L.Ed. 304; Cornell v. Coyne, 192 U.S. 418, 430, 24 S.Ct. 383, 385, 386, 48 L.Ed. 504; Strathearn S.S. Co. v. Dillon, 252 U.S. 348, 354, 40 S.Ct. 350, 351, 64 L.Ed. 607. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." Brotherhood of R. R. Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528–529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646.

" * * * [T]here is no need to refer to the legislative history where the statutory language is clear. 'The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' Gemsco, Inc., v. Walling, 1945, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921. This canon of construction has received consistent adherence in our decisions." Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207, 10 A.L.R.2d 921.

"Where the language and purpose of the questioned statute is clear, courts, of course, follow the legislative direction in interpretation. Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion. And that method of determining congressional purpose is likewise applicable when the literal words would bring about an end completely at variance with the purpose of the statute." United States v. Public Utilities Commission, 345 U.S. 295, 73 S.Ct. 706, 717, 97 L.Ed. 1020.

I am firmly of the opinion, then, that the unambiguous text of § 3294(a) settles the question as to what is the gist of the offense therein. See also 12 Virginia L.Rev. 287, 288–290.

In taking this position that there was prejudicial error in this case, I am aware that we implied that somewhat similar indictments were well drawn in Contreras v. United States, 5 Cir., 213 F.2d 96; Sulli v. United States, 5 Cir., 213 F.2d 100, certiorari denied 348 U.S. 826, 75 S.Ct. 43, 99 L.Ed. ——; and Fernandez v. United States, 5 Cir., 213 F.2d 101.

Those cases are distinguishable from the present one, however, since they involved *willful* violations covered by § 3294(c), while this case involves § 3294(a). That the gist of the latter offense is engaging in certain conduct without paying the tax is clear in my mind, whether that is true of the violation of § 3294(c) or not.

I would therefore reverse the conviction.