Sam **CAGNINA**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15179.

United States Court of Appeals
Fifth Circuit.

June 2, 1955.

Rehearing Denied July 15, 1955.

**150**

John R. Parkhill, Tampa, Fla., for appellant.

Vernon W. Evans, Jr., Asst. U. S. Atty., Tampa, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAW-KINS, District Judge.

TUTTLE, Circuit Judge.

Appellant was convicted in the District Court for the Southern District of Florida, Tampa Division, of violating 26 U.S. C.A. § 3294(c), part of the so-called Gambling Stamp Act, and sentenced to one year's imprisonment. He complains of the following errors in his conviction: (1) The evidence was insufficient to sustain the conviction; (2) the court below should have granted his motion to dis-

miss the information which commenced the prosecution; and (3) since the offense charged could have been committed only in Jacksonville, the court erred in denying appellant's motion to transfer the case to the Jacksonville Division, even though such motion was filed after arraignment.

(1) In brief, the evidence showed that Cagnina had worked at a gasoline service station in Tampa for three and a half years. On September 13, 1952, one Lawrence Wall drove up and handed Cagnina a package which the latter carried into the station. Again on September 20, Wall drove into the station and handed Cagnina a package, whereupon both were immediately arrested. The package contained carbon copies of tickets for a lottery called Cuba or bolita. The original copies were later taken from the home of Lawrence Wall. After the arrest Cagnina signed a statement in which he said that for three or four weeks Wall had delivered "packages of what I believe to be lottery tickets" to him at the station. Frank Duskin, a confessed member of the bolita racket, testified as follows concerning a conversation with Cagnina at the service station in August, 1952:

"A. I asked was Mister Sam in, and he said 'This is he here.'

"Q. Who said that? A. Mr. Cagnina there.

"Q. That's this defendant, sitting right here? A. Yes.

"Q. All right, sir. And then what occurred? A. I said, 'Mr. Blackburn sent me over here to see you about taking care of some tickets for Lawrence Wall, if he brought them over.' and he said, 'Yeah, I know.'

"Q. He said, 'Yeah, I know'? A. Yes.

"Q. Did you tell him what kind of tickets? A. Yes, sir.

"Q. What did you tell him? A. I told him bolita tickets."

Cagnina had never registered nor made application for a gambling stamp. There was no direct evidence that he received any compensation for what he did.

Cagnina took the stand and denied that he had anything to do with the bolita business and did not know the package contained bolita tickets until after he was arrested. He said that he had merely allowed Wall to leave packages at the station two times, as he allowed many customers to do. Cagnina said he made no attempt to conceal the packages. He admitted that he had been convicted of two liquor violations fifteen years previously.

As Judge Dawkins says in Sagonias v. United States, 5 Cir., 223 F.2d 146, the criminal sanctions for engaging in the occupation of accepting wagers without payment of the special tax apply likewise to engaging in receiving wagers for or on behalf of a person in that occupation; and the jury could properly infer that Cagnina did acts in the latter category. It is true that the information here did not allege the latter, but the former; that there was a variance. However, Cagnina does not show that he was misled, and we consider the error harmless. Here, Cagnina took the stand and swore he had nothing to do with the bolita racket; therefore the exact theory of the prosecution had no perceptible effect on his defense. The jury found him guilty under instructions which correctly stated the law on the proper theory, notwithstanding the mistake in the information. In Hodges v. United States, 223 F.2d 140, this court holds there was no prejudicial error from the same kind of variance, and *a fortiori* there was none here. The writer of this opinion dissented in Hodges, because the error of the prosecution there in proceeding on the *wrong* theory seems to him to have caused the defense to strive its best to establish the *right* theory, the one on which the court now sustains Hodges' conviction despite the variance. In the present case we are all of the opinion that there was no actual prejudice caused, because we cannot believe Cagnina's defense would have been any different under a more accurate informa-

tion. We are also of the unanimous opinion that it is not necessary to a conviction of receiving wagers on behalf of a person engaged in the lottery business without payment of the special tax, that the defendant be shown to have received a profit or compensation.

■ (2) As for the validity of the information itself, we think it did state sufficiently the essential facts constituting a violation of 26 U.S.C.A. § 3294(c). Appellant's argument on this point, that the statute is unconstitutionally vague, was decided against him in Sulli v. United States, 5 Cir., 213 F.2d 100, and the Supreme Court recently declined to review that case in 348 U.S. 826, 75 S.Ct. 43, 99 L.Ed. ——. However, the information does not follow exactly the language of the statute; and while none of us think this departure made the information insufficient, to be sure, the statute permits some considerable uncertainty on the point of what comprises the gist of the offense and where the crime was committed. As will be seen, we find it unnecessary to decide what should be the proper interpretation of the statute in this regard. It is appropriate, however, to compare the information with the statute at this point, in order to show, whatever the interpretation of the statute, the information was legally sufficient.

■ The information, in a single count, charged as follows:

"That during the month of September, 1952, in Polk County, Florida, in the Southern District of Florida, Sam Cagnina, who was then and there engaged in the business of accepting wagers as defined in Section 3285(b) (1) (C) and (2), Title 26, United States Code, did wilfully and unlawfully *fail to register and pay* the special tax required by law to be paid by him; in violation of Sections 2707, 3285, 3290, 3291, and

3294, Title 26, United States Code." (Emphasis added.)

The statute, on the other hand, provides, 26 U.S.C.A. § 3294:

"(a) Failure to pay tax. Any person who *does any act* which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000.

\*  \*  \*  \*  \*  \*

"(c) Willful violations. The penalties prescribed by section 2707 with respect to the tax imposed by section 2700 shall apply with respect to the tax imposed by this subchapter."

The acts referred to in sub-section (a) are defined in other sections of the subchapter as engaging in the business of accepting wagers or engaging in receiving wagers on behalf of any person in that business. The majority of the court differ from the writer in holding that failure to pay the tax, and not the doing of those acts, is the gist of the offense in § 3294(a). See Hodges v. United States, 5 Cir., 223 F.2d 140. Doubt was expressed in the dissenting opinion there as to what constitutes the gist of the offense in § 3294(c). It may well be argued that it is doing of the same acts, having willfully failed to pay the special tax. Do the words: "Willful violations. The penalties prescribed by section 2707 \* \* \*" mean "The *substantive offenses* prescribed by Section 2707, etc., together with the penalties therefor, shall be incorporated *in toto* into this subsection," or do they mean "the penalties for willful violations of the above subsection shall be the same as the penalties under Section 2707"? There is much to be said for both interpretations; rather, there is nothing entirely convincing for either.[1] But we find it un-

---

1. We note that the Int.Rev.Code of 1954, U.S.C.A. Title 26, eliminates this thorny problem of interpretation. While Subsections (a) and (b) of § 3294 were carried over practically intact as §§ 7262 and 7273(b) of the new Code, Subsection (c) was not reenacted. In §§ 7201 and 7203 of the new Code, criminal sanctions are imposed on willful violations of all parts of the Int.Rev.Code in general

necessary to decide which is correct, because we find that the information is legally sufficient and further that the venue was not improperly laid, whichever view is correct. It is well settled that an indictment or information is sufficient if it describes the offense with sufficient clearness to show a violation of law, to enable the accused to know with reasonable certainty the nature and cause of the accusation, to enable him to prepare his defense and to plead a judgment in bar of further prosecution of the same offense. United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619. The information here does meet that test of sufficiency in either case. Whether the failure to pay the tax or the doing of certain acts without paying the tax is the gist of the offense, the indictment did actually state all the elements of the offense, and there is nothing in the record to indicate that Cagnina was actually hampered in his defense. The court did not err, then, in refusing to dismiss the indictment, or if it did err, the mistake was harmless.

▬▬ (3) As for the appellant's final contention that his motion to transfer the case to the Jacksonville Division should have been granted, there are two reasons why that contention must fail, and it is unnecessary to decide the question whether the offense was actually committed in the Tampa or the Jacksonville division.[2] One reason is that the divisions of the Southern District of Florida were made as a matter of convenience to that court. The fact that they were called divisions instead of sections, or by some other name, is purely fortuitous. The rules of the Southern District were not intended to and do not endow defendants by this accidental terminology, with any right to transfer of trials. In this we agree with Judge Barker's order refusing such a motion to transfer in United States v. Ippolito, D.C., 16 F.R.D. 588, the appeal from which case is decided sub nom. Ippolito v. United States, 5 Cir., 223 F.2d 154; and with Judge McDowell in United States v. Sutherland, D.C.W.D.Va., 214 F. 320, that such divisions are not within the contemplation of Rule 18, Fed.Rules Crim.Proc., 18 U.S.C.A., or its predecessor statute, Section 53 of the Judicial Code. Our opinion is not weakened by Amendment VI of the Constitution, for there it is said:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have

---

terms, without distinction among Income Tax, Firearms Tax, Gambling Stamp Tax, and the like. These sanctions define the offenses as willfully attempting to evade or defeat any tax, and willfully failing to file any return, pay any tax, or supply any information required by the Code. It is evident that the gist of the several willful offenses is clearly defined in the new Code.

2. The failure to pay the tax, which both parties seem to regard as the gist of the offense, occurred in Jacksonville, at the office of the District Director of Internal Revenue. The receiving of wagers on behalf of one engaged in the business of accepting wagers, occurred in Tampa, Hillsborough County. Thus under neither theory was the offense committed in Polk County, as alleged in the information. However, the trial judge was

right in regarding this as an immaterial variance so long as there is no misleading and so long as the proof shows the offense occurred within the jurisdiction of the court. Norris v. United States, 5 Cir., 152 F.2d 808, certiorari denied 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623. For the correct principle of law determining where an offense is committed in cases of this kind, see Dobie, "Venue in Criminal Cases in the United States District Court," 12 Va.L.Rev. 287, 288, 290; Murtagh v. Leibowitz, 303 N.Y. 311, 101 N.E.2d 753, 30 A.L.R.2d 1259, and the annotation at 30 A.L.R.2d 1265. United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, may well not be apposite here, depending on the proper interpretation of § 3294(c), a question which we do not think it appropriate to decide.

**154**

been previously *ascertained by law* * * *." (Emphasis added.)

■ The second reason is that the motion for transfer, having been filed many weeks after arraignment and not until about a week before trial, was made too late. Rule 22, Fed.Rules Crim. Proc., provides:

"A motion to transfer under these rules may be made at or before arraignment or at such other time as the court or these rules may prescribe."

Appellant has not shown that any later time for filing was permitted by the court or by any rule, and we think that Rule 22 is controlling. The trial court thus has discretion to deny any motion coming long after arraignment, as this one did. Appellant's argument on this point consists only of the obviously erroneous inference that our holding in Silverberg v. United States, 5 Cir., 4 F.2d 908, 909, that "It was too late to raise the question after the jury had been impaneled and the defendants had gone to trial * * *" means that a motion can be made at any time before trial. See also Shetterly v. United States, 6 Cir., 205 F.2d 834. While we recognize the importance of venue of a criminal trial, United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236, venue is not a non-waivable jurisdictional requirement or one which the defendant can raise at any time. See Fullerton v. Government of Canal Zone, 5 Cir., 8 F.2d 968, 970; 34 Cornell L.Q. 129, 135. There is nothing to the contrary in the Johnson case. Therefore, Rule 22 validly limits the time in which a motion for transfer of a trial can be made, and that Rule was a sufficient ground to deny the motion in the present case.

There being no reversible error, the judgment is

Affirmed.

HUTCHESON, Chief Judge, concurs in the result.