# STRATHEARN STEAMSHIP COMPANY, LIMITED, *v.* DILLON. .

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 373. · Argued December 9, 1919.—Decided March 29, 1920.

Section 4 of the Seamen's Act of March 4, 1915, c. 153, 38 Stat. 1164, amending Rev. Stats., § 4530, provides that every seaman on a vessel of the United States shall be entitled to receive on demand from the master one-half of the wages which he shall then have earned, at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended; that all stipulations in the contract to the contrary shall be void; that such demand shall not be made before the expiration of or oftener than 5 days; that the master's failure to comply shall release the seaman from his contract and entitle him to full payment of wages earned, and (by a proviso) that the section shall apply to seamen on foreign vessels while in harbors of the United States, and that the courts of the United States shall be open to such seamen for its enforcement.

*Held:* (1) The proviso makes it clear that the benefits of the section are for foreign seamen on foreign vessels as well as American seamen on such vessels, since, otherwise, the grant of access to federal courts —a right already enjoyed by American seamen—would have been superfluous.   P. 353.   *Sandberg* v. *McDonald,* 248 U. S. 185, distinguished.

(2) The title of the act does not justify a different construction. P. 354.

(3) The section is constitutional as applied to the case of a foreign seaman who shipped abroad on a foreign vessel under a contract withholding payment of wages until the end of the voyage, and where demand was made before that time, it being within the authority of Congress thus to condition the right of foreign vessels to enter and use the ports of the United States.    P. 355.   *Patterson* v. *Bark Eudora,* 190 U. S. 169.

(4) The wages in respect of which demand may be made are not limited to those earned in a port of. the United States, nor does the section intend that demand made in such a port shall be deferred five days from the arrival of the vessel there. P. 356.

256 Fed. Rep. 631, affirmed.

THE case is stated in the opinion.

*Mr. Ralph James M. Bullowa,* for petitioner, submitted: The statute was not intended to apply to a foreign seaman entering into a valid contract in a foreign port for service on a foreign vessel.

If the scope of the act is so broadened, it is necessary to impute to Congress an intention to enact legislation having force beyond the territory of the United States; to interfere with friendly foreigners by destroying the contracts which they have made between themselves at home merely because their ships visit our ports; and to interfere with and attempt to control the relations between the subjects of a foreign friendly power aboard their own ships while they are temporarily in American waters. The language of the proviso does not require such a construction. It may readily be so construed as to avoid such results by excluding from its operation foreign seamen under agreements made in foreign countries, thus making it conform to the purpose of the act as expressed in its title.

The libellant contends that the object was to make the seaman a "free man"—in simple words, to encourage desertion from foreign vessels, not to promote the welfare of American seamen. This is much too short-sighted to be accepted as American. Under British law the breach of a seaman's contract is desertion, and the punishment for desertion is imprisonment. Of what avail is it for a British seaman to desert and to ship on an American vessel with higher wages and, when he arrives in a British port, to be imprisoned? The argument further implies that it was the will of Congress to impose its standards not only on behalf of American seamen but of all seamen American or foreign. Fundamentally and radically the argument is at variance with the first principles of our Republic and is an attempt to violate the sovereignty of

each nation and the comity of nations.    Moore, International Law Dig., vol. II, p. 335; *Wildenhus's Case*, 120 U. S. 1; *Sandberg* v. *McDonald*, 248 U. S. 185.

If construed as libellant contends, this statute violates the due process of law clause of the Constitution.    It .would give him wages to which he is not entitled under his contract; these same wages it would take from the ship; it would deprive the ship of libellant's services to which, under their contract, it is entitled; and it would take from the ship a right to defend an action brought by the seaman for wages which under his contract he has not yet earned.    The argument that the effect of the statute is "merely remedial," in opening the courts of this country to foreign seamen, is contrary to the statements by which it has been explained, and to the statute itself.    Properly, Congress has refused our fora to the enforcement of remedies which are contrary to its public policy (such as imprisonment for desertion), and has made it illegal to enter into a contract contrary to its law within its jurisdiction (*Patterson* v. *Bark Eudora*, 190 U. S. 169); but it is radically different to open our fora, not for the enforcement of its law, but for the avowed purpose of interfering with and rendering void the contracts, laws and regulations of a friendly power.

It cannot be held that the law of the place of performance is the law of the United States, for the place of performance was a British ship; and although she was not immune from process while in the ports of the United States, still she did not cease to be British.    While amenable to the police power of the United States, and of its several States, "her discipline and all things done on board which affected only the vessel or those belonging to her" must be dealt with according to British law.    The agreement to pay the seamen's wages was not to be performed in the United States—the wages were to be paid only upon the return of the vessel to a port in the United

Kingdom, except as the master might voluntarily make prior payments.

The temporary stay in a port of the United States cannot be held to take away the right of the owner to the security, which he held for the performance of the seaman's contract.

Even if the act applies to foreign seamen upon foreign vessels who ship at a foreign port, the libellant's demand for half wages was premature, five days not having elapsed from the time of the arrival of the vessel at an American port. *The Italier,* 257 Fed. Rep. 712.

*Mr. George Sutherland* and *Mr. W. J. Waguespack,* with whom *Mr. Silas B. Axtell* was on the brief, for respondent.

*Mr. Frederic R. Coudert* and *Mr. Howard Thayer Kingsbury* for the British Embassy, by special leave of court.

*The Solicitor General,* with whom *Mr. A. F. Myers,* was on the brief, for the United States, by special leave of court.

Mr. Justice Day delivered the opinion of the court.

This case presents questions arising under the Seamen's Act of March 4, 1915, c. 153, 38 Stat. 1164. It appears that Dillon, the respondent, was a British subject, and shipped at Liverpool on the eighth of May, 1916, on a British vessel. The shipping articles provided for a voyage of not exceeding three years, commencing at Liverpool and ending at such port in the United Kingdom as might be required by the master, the voyage including ports of the United States. The wages which were fixed by the articles were made payable at the end of the voyage. At

the time of the demand for one-half wages, and at the time of the beginning of the action, the period of the voyage had not been reached. The articles provided that no cash should be advanced abroad or liberty granted other than at the pleasure of the master. This, it is admitted, was a valid contract for the payment of wages under the laws of Great Britain. The ship arrived at the Port of Pensacola, Florida, on July 31, 1916, and while she was in that port, Dillon, still in the employ of the ship, demanded from her master one-half part of the wages theretofore earned, and payment was refused. Dillon had received nothing for about two months, and after the refusal of the master to comply with his demand for one-half wages, he filed in the District Court of the United States a libel against the ship, claiming $125.00, the amount of wages earned at the time of demand and refusal.

The District Court found against Dillon upon the ground that his demand was premature. The Circuit Court of Appeals reversed this decision, and held that Dillon was entitled to recover. 256 Fed. Rep. 631. A writ of certiorari brings before us for review the decree of the Circuit Court of Appeals.

In *Sandberg* v. *McDonald*, 248 U. S. 185, and *Neilson* v. *Rhine Shipping Co.*, 248 U. S. 205, we had occasion to deal with § 11 of the Seamen's Act, and held that it did not invalidate advancement of seamen's wages in foreign countries when legal where made. The instant case requires us to consider now § 4 of the same act. That section amends § 4530, Rev. Stats., and so far as pertinent provides: "Sec. 4530. Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary

shall be void: *Provided,* Such a demand shall not be made before the expiration of, nor oftener than once in five days.— Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled ·to full payment of wages earned. . . . *And provided further,* That this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement."

This section has to do with the recovery of wages by seamen, and by its terms gives to every seaman on a vessel of the United States the right to demand one-half the wages which he shall have then earned at every port where such vessel, after the voyage has been ·commenced, shall load or deliver cargo before the· end of the voyage, and stipulations in the contract to the contrary are declared to be void. A failure of the master to comply with the demand releases the seaman from his contract and entitles him to recover full payment of the wages, and the section is made applicable to seamen on foreign vessels while in harbors of the United States, and the courts of the United States are open to such seamen for enforcement of the act.

This section is an amendment of § 4530 of the Revised Statutes. It was intended to supplant that section, as amended by the Act of December 21, 1898, c. 28, 30 Stat. 756, which provided, "Every seaman on a vessel·of the United States shall be entitled to receive from the master of the vessel to which he belongs one-half part of the wages which shall be due him at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended unless the contrary be expressly stipulated in the contract," etc.

The section, of which the statute now under consideration is an amendment, expressly excepted from the right to recover one-half of· the wages those cases in which the

contract otherwise provided. In the amended section all such contract provisions are expressly rendered void, and the right to recover is given the seamen notwithstanding contractual obligations to the contrary. The language applies to all seamen on vessels of the United States, and the second proviso of the section as it now reads makes it applicable to seamen on foreign vessels while in harbors of the United States. The proviso does not stop there, for it contains the express provision that the courts of the United States shall be open to seamen on foreign vessels for its enforcement. The latter provision is of the utmost importance in. determining the proper construction of this section of the act. It manifests the purpose of Congress to give the benefit of the act to seamen on foreign vessels, and to open the doors of the federal courts to foreign seamen. No such provision was necessary as to American seamen, for they had the right independently of this statute to seek redress in the courts of the United States, and, if it were the intention of Congress to limit the provision of the act to American seamen, this feature would have been wholly superfluous.

It is said that it is the purpose to limit the benefit of the act to American seamen, notwithstanding this provision giving access to seamen on foreign vessels to the courts of the United States, because of the title of the act in which its purpose is expressed "to promote the welfare of American seamen in the merchant marine of the United States." But the title is more than this, and not only declares the purposes to promote the welfare of American seamen but further to abolish arrest and imprisonment as a penalty for desertion and to secure the abrogation of treaty provisions in relation thereto; and to promote safety at sea. But the title of an act cannot limit the plain meaning of its text, although it may be looked to to aid in construction in cases of doubt. *Cornell* v. *Coyne*, 192 U. S. 418, 530, and cases cited. Apart from the text, which we think plain, it is by

no means clear that, if the act were given a construction to limit its application to American seamen only, the purposes of Congress would be subserved, for such limited construction would have a tendency to prevent the employment of American seamen, and to promote the engagement of those who were not entitled to sue for one-half wages under the provisions of the law. But, taking the provisions of the act as the same are written, we think it plain that it manifests the purpose of Congress to place American and foreign seamen on an equality of right in so far as the privileges of this section are concerned, with equal opportunity to resort to the courts of the United States for the enforcement of the act. Before the amendment, as we have already pointed out, the right to recover one-half the wages could not be enforced in face of a contractual obligation to the contrary. Congress, for reasons which it deemed sufficient, amended the act so as to permit the recovery upon the conditions named in the statute. In the case of *Sandberg* v. *McDonald*, 248 U. S. *supra*, we found no purpose manifested by Congress in § 11 to interfere with wages advanced in foreign ports under contracts legal where made. That section dealt with advancements, and contained no provision such as we find in § 4. Under § 4 all contracts are avoided which run counter to the purposes of the statute. Whether consideration for contractual rights under engagements legally made in foreign countries would suggest a different course is not our province to inquire. It is sufficient to say that Congress has otherwise declared by the positive terms of this enactment, and if it had authority to do so, the law is enforcible in the courts.

We come then to consider the contention that this construction renders the statute unconstitutional as being destructive of contract rights. But we think this contention must be decided adversely to the petitioner upon the authority of previous cases in this court. The matter was

fully considered in *Patterson* v. *Bark Eudora*, 190 U. S. 169, in which the previous decisions of this court were reviewed, and the conclusion reached that the jurisdiction of this Government over foreign merchant vessels in our ports was such as to give authority to Congress to make provisions of the character now under consideration; that it was for this Government to determine upon what terms and conditions vessels of other countries might be permitted to enter our harbors, and to impose conditions upon the shipment of sailors in our own ports, and make them applicable to foreign as well as domestic vessels. Upon the authority of that case, and others cited in the opinion therein, we have no doubt as to the authority of Congress to pass a statute of this sort, applicable to foreign vessels in our ports and controlling the employment and payment of seamen as a condition of the right of such foreign vessels to enter and use the ports of the United States.

But, it is insisted, that Dillon's action was premature as he made a demand upon the master within less than five days after the vessel arrived in an American port. This contention was sustained in the District Court, but it was ruled otherwise in the Court of Appeals. Turning to the language of the act, it enacts in substance that the demand shall not be made before the expiration of five days, nor oftener than once in five days. Subject to such limitation, such demand may be made in the port where the vessel stops to load or deliver cargo. It is true that the act is made to apply to seamen on foreign vessels while in United States ports, but this is far from requiring that the wages shall be earned in such ports, or that the vessels shall be in such ports five days before demand for one-half the wages earned is made. It is the wages of the voyage for which provision is made, with the limitation of the right to demand one-half of the amount earned not oftener than once in five days. The section permits no

demand until five days after the voyage has begun, and then provides that it may be made at every port where the vessel stops to load or deliver cargo, subject to the five-day limitation.   If the vessel must be five days in port before demand can be made, it would defeat the purpose of the law as to vessels not remaining that long in port, and would run counter to the manifest purpose of Congress to prevent a seaman from being without means while in a port of the United States.

We agree with the Circuit Court of Appeals of the Fifth Circuit, whose judgment we are now reviewing, that the demand was not premature.   It is true that the Circuit Court of Appeals for the Second Circuit held in the case of *The Italier,* 257 Fed. Rep. 712, that demand, made before the vessel had been in port for five days, was premature; this was upon the theory that the law was not in force until the vessel had arrived in a port of the United States. But, the limitation upon demand has no reference to the length of stay in the domestic port.   The right to recover wages is controlled by the provisions of the statute and includes wages earned from the beginning of the voyage. It is the right to demand and recover such wages, with the limitation of the intervals of demand as laid down in the statute, which is given to the seaman while the ship is in a harbor of the United States.

We find no error in the decree of the Circuit Court of Appeals and the same is

*Affirmed.*