## THE PRAHOVA.

### No. 1386 RJ.

District Court, S. D. California, Central Division.

April 3, 1941.

Herbert R. Lande, of San Pedro, Cal., for libelant, George Angelescu.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for respondent, the steamship Prahova, and claimant, Dolphin Co., Inc.

JAMES ALGER FEE, District Judge.

Angelescu has brought a libel in rem against the "Prahova" in which he alleges he is a merchant seaman and a Roumanian citizen who signed articles "for an indefinite time under terms and conditions that were given by the law of" Roumania and faithfully performed his duty. He claims he is entitled to discharge and wages and allowances (1) because under Roumanian law he has served out his contract since he has served four years, and is entitled to leave the ship and receive the compensation and benefits of his contract, (2) because the articles were broken by the ship by cutting his wages in half without his consent, and (3) because he has been informed by the captain that the vessel has been changed from Roumanian registry. Upon this libelant asks for relief in the form of money.

The Dolphin Company, Inc., has filed a voluminous answer to the libel as claimant of the vessel which it alleges is now or will be named the "Tropicus" and whose registry will be changed to that of some foreign country probably that of the Republic of Panama. Various defenses are set up in this answer.

228

The claimant also filed a motion to have the District Court of the United States decline jurisdiction (a) because the claim is that of a Roumanian citizen against a foreign vessel owned by a foreign corporation and is based on a Roumanian contract which must be construed according to the law of that country, (b) because the Royal Roumanian Legation at Washington, D. C. has decided the rights of libelant, and (c) because the pleadings show the claim is without merit.

 There are some controversial points upon the determination of which in favor of libelant, the court might be required to take jurisdiction. If the voyage has ended, the courts of the United States shall be open to foreign seamen for enforcement of the remainder of the wages to which they then become entitled.[1] Under the state of facts here this voyage may have ended either by the change of flag,[2] or by abandonment of the voyage.[3] If any of the factors set out operated as a discharge the court was bound to hear the controversy.[4]

On the hearing considerable attempt was made to debate the merits of libelant's claim. If the court accept jurisdiction such contentions are pertinent, but until then these are impertinent. If acceptance of jurisdiction is not mandatory, at least the court in sound legal discretion has the power to hear the case.

Upon this basis there are certain factors which appear here and which have persuaded courts in other contests to decline to hear such a controversy. One of these is that interpretation of a contract between a Roumanian seaman and a Roumanian ship in the language of Roumania and according to the laws of Roumania is involved. Another is that the matter is complicated by the fact that the contract itself involves certain features which, without fault of the ship, it may not be possible to carry out. The question as to whether the court should compensate libelant in money for such a failure may be involved.

The phase chiefly considered by the court was the attitude of the diplomatic representatives of the Kingdom of Roumania in the United States. There was no appearance in court by any such representative. However, the contention was made that the Roumanian representatives had decided the questions involved. Upon direction of the court, counsel for claimant attempted to ascertain the attitude of the representatives of Roumania. A letter and a telegram from Brutus Coste, Charge d'Affaires of the Roumanian Government, quoted in letters by counsel on each side respectively to and received by the judge on March 20, 1941, are placed on file and treated as part of the record. Disclaimer of any right to interfere with any rights of libelant against the ship is set forth therein. Seemingly this attitude is in accordance with the treaty between the United States and Roumania. These communications are accepted as decisive.

In any event, the court must treat the matter in a practical manner and not be blind to facts. The status of the ship is uncertain but it appears it is no longer of Roumanian registry. The provision of the contract that the libelant will be furnished transportation to Roumania may have become impossible in view of world conditions.

 The seizure of the ship under these circumstances is the only way in which the libelant has the least assurance that he will get his rights under the contract or anything at all. For the court to disclaim jurisdiction under such circumstances would work an injustice by releasing the only possible security which libelant could have.

It is furthermore probable that the court has no discretion in the matter but must exercise jurisdiction.[5]

The order will therefore be that the court accepts jurisdiction and refuses to dismiss the libel for want of jurisdiction.

[1] 46 U.S.C.A. § 597.

[2] See Dustin v. Murray, 8 Fed.Cas. 144, No. 4201.

[3] The Helen Fairlamb, D.C., 251 F. 412.

[4] Strathearn S. S. Co. v. John Dillon, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607.

[5] The S. S. Gandia, D.C., 34 F.Supp. 405; The Memas, D.C., 35 F.Supp. 661, 1940 A.M.C. 1606.