Tzanetos LASCARATOS

v.

Liberian S/T OLYMPIC FLAME, former-
ly the Honduran S/T Olympic Flame,
her boats, engines, tackle, apparel, etc.,
J. N. Patrinos, C. Tsoros, and D. D.
Vlismas, all non-residents, individually,
and as Masters, and Olympic Oil Lines
(Panama), S.A., Central American
Steamship Agency, Inc., Olympic Mari-
time, S.A., Seaford Marine, S.A., all for-
eign corporations or associations, as
owners and/or operators of the Liberi-
an S/T Olympic Flame, formerly the
Honduran S/T Olympic Flame.

No. 471 of 1963.

United States District Court
E. D. Pennsylvania.

Feb. 28, 1964.

Burt M. Morewitz, Newport News, Va.,
Sidney J. Smolinsky, Dorfman, Pechner,
Sacks & Dorfman, Philadelphia, Pa., for
libelant.

Harrison G. Kildare, Rawle & Hender-
son, Philadelphia, Pa., for respondents.

LUONGO, District Judge.

Tzanetos Lascaratos, libelant, com-
menced this libel in admiralty for (1)
earned wages and penalty wages under
the provisions of 46 U.S.C.A. §§ 596,
597 and 599; (2) damages for aggrava-
tion of a hearing deficiency; and (3)
maintenance and cure until maximum re-
covery. Before me are respondents' ex-
ceptions seeking dismissal of the libel
on the ground of *forum non conveniens.*
Respondents concede that this court has
jurisdiction over the causes, they con-
tend only that this court ought not ex-
ercise it because of insufficiency of con-
tacts.

Libelant, a French citizen and resident, joined the Honduran S/T OLYMPIC FLAME in 1957 in France. He claims that respondents failed to pay wages due him, under the provisions of 46 U.S.C.A. §§ 596, 597 and 599, at the American ports of Hampton Roads, Virginia, on May 2, 1959, and El Segundo, California, on August 8, 1960, and he is, therefore, entitled to recover such wages plus penalties. The statutes in question are applicable to foreign seamen serving aboard foreign vessels. Libelant has asserted a sufficient claim under the statute.[1] This court has and must exercise jurisdiction over such wage claims.[2] Respondents' exceptions must, therefore, be overruled as to the statutory wage claims.

Libelant's non-wage claims are for damages for aggravation of his hearing deficiency, and for maintenance and cure until maximum recovery. With respect to the damage claim, libelant contends that American law—the Jones Act, 46 U.S.C.A. § 688—is to be applied. The applicability of the Jones Act is a choice of law problem and depends upon the sufficiency of the "contacts between the transaction involved in the case and the United States * * *." Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 441 (2nd Cir. 1959), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). See also, e. g., Romero v. Internat'l Terminal Operating Co., 358 U.S. 354, 381–384, 79 S.Ct. 468, 3 L.Ed.2d 368

(1959), rehearing denied, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959); Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Mpampouros v. S.S. Auromar, 203 F.Supp. 944, 950 (D.Md.1962).

The relevant facts and the countries with which they have contact are as follows:

1. In December, 1957, at Marseilles, France, libelant was hired by respondents to serve aboard the OLYMPIC FLAME as radio officer and was to receive compensation to include "benefits conferred by the Constitution and Laws of the Republic of Honduras." He joined the vessel at Marseilles later that month under those same terms.

2. The master, officers, and crew of the OLYMPIC FLAME, during the period libelant was aboard, were primarily Greek citizens and residents.

3. The Greek language was the sole means of communication aboard the vessel.

4. The nationality of the vessel was Honduran when libelant shipped aboard, but was changed to Liberian in February, 1958. The terms and conditions of libelant's employment remained unchanged when the vessel's registry changed.

5. In March, 1960, libelant experienced some loss of hearing and requested medical care. Respondents did not send libelant to a doctor until June 14, 1960, at

1. Strathearn S.S. Co. v. Dillon, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607 (1920); Sandberg, et al. v. McDonald, 248 U.S. 185, 39 S.Ct. 84, 63 L.Ed. 200 (1918); Patterson v. Bark Eudora, 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002 (1903); Monteiro v. Sociedad Maritima San Nicolas, S.A., 280 F.2d 568 (2nd Cir. 1960), cert. denied, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960); Heros v. Cockinos, 177 F.2d 570 (4th Cir. 1949); The Estrella, 102 F.2d 736 (3rd Cir. 1938), cert. denied, 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1055 (1939); Stavridis v. CIA Panamena Europa Navegacion Ltda., 90 F.Supp. 187 (S.D.N.Y.1950).

2. Monteiro v. Sociedad Maritima San Nicolas, S.A., supra, 280 F.2d at 573;

The Fletero v. Arias, 206 F.2d 267, 271 (4th Cir. 1953), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953); Heros v. Cockinos, supra, 177 F.2d at 572; Lakos v. Saliaris, 116 F.2d 440, 445 (4th Cir. 1940); Giatilis v. The Darnie, 171 F.Supp. 751, 753 (D.Md.1959).

The Estrella, supra, decided in this circuit, appears to make it a matter of discretion, but that case, where libelants were Norwegian subjects sailing aboard a Norwegian vessel, is distinguishable in that it involved a treaty under which the Norwegian consul was given jurisdiction over wage claims concurrent with that of the federal courts, and the district courts, therefore, had "discretion to accept or refuse to take jurisdiction." Id., 102 F.2d at 737.

San Pedro, California. Despite the report of the doctor that libelant had a "hearing defect," respondents did not send libelant to an ear specialist and required him to sail with the vessel. By the time the ship returned to California on August 8, 1960, libelant's hearing loss had increased and respondents' doctor recommended an operation. The operation was not performed, instead respondents discharged libelant and repatriated him to Marseilles, France, where respondents furnished libelant with treatment from August 27, 1960 to March 2, 1961. Since March 2, 1961, respondents have not provided libelant with further medical care "even though their own doctor certified on March 6, 1961, that libelant required 'treatment of long duration'."

6. The individual respondents are Greek citizens and residents.

7. The American corporate respondent acted solely as agent for the vessel and her owners, and not on its own behalf.

8. The foreign corporate respondents were incorporated in Panama and have their principal offices in Montevideo, Uruguay.

On the foregoing facts respondents contend that if jurisdiction is retained by this court the parties will be prejudiced by delay and expense in obtaining testimony of Greek witnesses, by the inconvenience attendant the use of interpreters with danger of errors in translation, problems in applying Honduran law and, all in all, there are insufficient contacts of the parties and of the claims with the American forum to justify retention of jurisdiction by this court.

Libelant, on the other hand, points out quite properly that wherever the case is tried it will be necessary to have the testimony of American and French doctors as well as testimony of Greek witnesses so that interpreters will be required in any event. As for the law to be applied, libelant contends that American law—the Jones Act—will be applicable to his claim for aggravation of the hearing condition. He alleges that the OLYMPIC FLAME and the two foreign corporate owner respondents were ultimately owned and controlled by American interests. Respondents have denied this, averring that the owners are Panamanian corporations financed "by other than American interests."

■ American ownership and control appears to be a factor of significance in determining whether the Jones Act is to be applied: Southern Cross S. S. Co. v. Firipis, 285 F.2d 651 (4th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961); Rodriguez v. Solar Shipping Ltd., 169 F.Supp. 79 (S.D.N.Y. 1958); Bobolakis v. Compania Panamena Maritima San Gerassimo, 168 F.Supp. 236 (S.D.N.Y.1958). Libelant wants the opportunity to establish that such ultimate American ownership and control exists. Presumably specific facts bearing upon such control and ownership are within respondents' knowledge, but they have not set them forth in pleadings or affidavits, contenting themselves with making a general conclusory statement of denial.

■ On the present state of the record I cannot say that the alleged ultimate American ownership and control has been disproved. Libelant will be afforded the opportunity to establish the existence of such ownership and control for whatever effect it may have upon choice of law, and upon whether this court's jurisdiction over the non-wage causes of action is mandatory or discretionary, and, if discretionary, whether it should be exercised. Rodriguez v. Solar Shipping Ltd., supra; Bobolakis v. Compania Panamena Maritima San Gerassimo, supra; Bartholomew v. Universe Tankships, Inc., supra; Motor Distributors Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463 (5th Cir. 1957), cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760, rehearing denied, 353 U.S. 989, 77 S.Ct. 1282, 1 L.Ed. 2d 1147 (1957); Tsangarakis v. Panama S.S. Co., 197 F.Supp. 704 (E.D.Pa.1961).

Since this court must hear libelant's wage claims and since the record does not clearly show that injustice will result

**164**

from this court's retention of jurisdiction of the non-wage claims, see Motor Distributors Ltd. v. Olaf Pedersen's Rederi A/S, supra, 239 F.2d at 465, respondents' exceptions seeking dismissal of the libel on the ground of *forum non conveniens* will be overruled.

### ORDER

And now, this 28th day of February, 1964, it is ordered, adjudged and decreed that respondents' exceptions are overruled and the motion to dismiss the libel is denied.