**Stamatios MIHALINOS, Plaintiff,**

v.

**LIBERIAN S.S. TRIKALA, formerly the Liberian S.S. Nilos, her boats, engines, tackle, apparel, etc., Stam K. Moundras, a nonresident, individually and as master of the Liberian S.S. NILOS, Eugene Panagopoulos, 29 Broadway, New York, New York, Crestwood Shipping Agencies, Inc., New York, and Naciente Compania Naviera, S.A., a Panamanian corporation or association, as owners and/or operators of the Liberian S.S. Nilos, Defendants.**

**Civ. No. 71–115.**

United States District Court,
S. D. California.

Jan. 11, 1972.

Clyde C. Crockett, of Crockett, Kennedy & Kuerbis, San Diego, Cal., for plaintiff.

Lillick, McHose, Wheat, Adams & Charles, Thomas F. Melchior, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION

TURRENTINE, District Judge.

This is an action in admiralty, in rem against the vessel TRIKALA (ex NILOS) and in personam against the three other defendants.

The libel is in four counts: (1) Earned wages, under 46 U.S.C.A. §§ 596 and 597; (2) Statutory penalties for failure to pay earned wages without sufficient cause, under 46 U.S.C.A. §§ 596 and 597; (3) Unseaworthiness under the general maritime law, and negligence under the Jones Act[1]; (4) Maintenance and cure under the general maritime law.[2]

The libel was filed on March 31, 1971. No answer has been received; instead, defendants on November 1, 1971, moved for an order dismissing plaintiff's libel on the grounds that this court has no personal jurisdiction over defendants, that plaintiff's complaint fails to state a claim upon which relief can be granted, that plaintiff has agreed to litigate all his claims in Greece, and upon the doctrine of forum non conveniens. Defendants have supported their motion to dismiss with affidavits. Plaintiff filed no affidavits and presented no evidence at the hearing of defendants' motion. For the reasons set forth herein, the court concludes that defendants' motion should be granted.

The pleadings and affidavits submitted to the court establish that the following facts exist without substantial controversy:

Plaintiff, Stamatios Mihalinos, is a Greek national who joined the TRIKALA at Yokohama, Japan, on June 14, 1969, after having signed a contract of employment at Pireaus, Greece, on December 12, 1968. This contract provides that plaintiff's wages and the terms and conditions of his work were to be governed by the "Greek Collective Agreement," which states that any claims or rights arising out of his employment, including claims on account of illness or accident, were to be governed exclusively by the provisions of the "Collective Agreement" and Greek law. Further, the contract provides that any dispute is to be adjudged exclusively by competent Greek authorities in Greek forums.

The vessel TRIKALA is registered under the Liberian flag, is manned completely by Greek nationals and is owned by defendant Naciente Compania Naviera, S.A., which is incorporated and has its principal office in the Republic of Panama. None of the shareholders or officers of that corporation were at any pertinent time citizens or resident aliens of the United States. Defendant, Stam K. Moundros, a Greek national, was master of the TRIKALA when plaintiff sustained injuries and when plaintiff was discharged at Adak, Alaska.

The only defendant which had any contact with the United States is Crestwood Shipping, Inc., a New York corporation which merely acted as the New York area agent for Naciente Compania Naviera, S.A. It was responsible for the employment and general operation of the TRIKALA when it was in the New York area. However, all instructions with respect to the vessel were received from the TRIKALA's owners or its general agent. Crestwood has never acted

---

[1]. 46 U.S.C.A. § 688.

[2]. Plaintiff asserts that all four counts are also actionable under Title 22 of the Liberian Code of Laws of 1956, as amended, apparently inferring that the court should at least retain jurisdiction so that this law can be applied.

as the operator, owner or general manager of the vessel.

The role of the defendant Crestwood Shipping, Inc., was terminated in December, 1970, when Commercial Oil Carriers, Inc., a Delaware Corporation, assumed the duties of acting as the New York area agent for the TRIKALA. This corporation, whose president, Eugene Panagopoulos, is a named defendant, was not even in existence at the time plaintiff sustained his injuries. Defendant Eugene Panagopoulos has never been an operator, owner or manager of the TRIKALA; nor has he ever controlled the vessel in any fashion whatsoever as of the date of the hearing in this case.

On June 30, 1969, plaintiff sustained injuries aboard the vessel while it was in international waters at Latitude 49.-06N, Longitude 167.34W. These injuries necessitated that plaintiff be discharged from the vessel on July 1, 1969, at Adak, Alaska, for emergency medical treatment. Subsequently, on July 9, 1969, plaintiff was repatriated, by air, to Athens, Greece, at the expense of defendant Naciente Compania Naviera, S. A.

Plaintiff now maintains that this court should exercise jurisdiction over his causes of action and grant him the redress he seeks by applying both the laws of this nation and the laws of Liberia. However, it is the considered opinion of this court that jurisdiction should be declined in this case.

With respect to the claims asserted under the Jones Act and general maritime law, the court is guided by the holding of the Supreme Court in the case of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Therein, the court held that there was no jurisdiction under the Jones Act for injuries sustained by a foreign seaman injured while serving aboard a foreign vessel when the only contact with the United States was the signing of the seaman's shipping articles while he was temporarily in this country. After reviewing the legislative history of the Jones Act, Justice Jackson concluded that Congress did not intend that the courts of this country should be required to take jurisdiction and to apply the laws of the United States in every maritime personal injury case simply because the parties were before the court. In determining that the Jones Act was inapplicable because of insufficient contacts with the United States, the court considered the following factors: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance of the domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum.

If, under this test, the contacts with this country are more than minimal, then the court must accept jurisdiction and apply the Jones Act. Hellenic Lines v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); Bartholomew v. Universe Tankships, Inc., 263 F. 2d 437 (2nd Cir. 1959). However, where these contacts are nonexistent or minimal, then the Jones Act *cannot* be applied and jurisdiction thereunder is lacking. Lauritzen v. Larsen, *supra.*

The same principles apply in an action brought under the general maritime law of the United States. In the case of Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court affirmed the test set forth in *Lauritzen* and applied it to an action brought by a foreign seaman under the general maritime law of this nation. Therein, the Court stated:

While Lauritzen v. Larsen involved claims asserted under the Jones Act, the principles on which it was decided did not derive from the terms of that statute. We pointed out that the Jones Act had been written "not on a clean slate, but as a postscript to a long series of enactments governing shipping. All were enacted with regard to a seasoned body of maritime

law developed by the experience of American courts long accustomed to dealing with admiralty problems in reconciling our own with foreign interests and in accommodating the reach of our own laws to those of other maritime nations." 345 U.S. at page 577 [, 73 S.Ct. at page 925]. Thus the Jones Act was applied "to foreign events, foreign ships and foreign seamen only in accordance with the usual doctrine and practices of maritime law." 345 U.S. at page 581 [, 73 S.Ct. at page 927]. The broad principles of choice of law and the applicable criteria of selection set forth in *Lauritzen* were intended to guide courts in the application of maritime law generally. Of course, due regard must be had for the differing interests advanced by varied aspects of maritime law. But the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment for choice of law purposes. Thus the reasoning of Lauritzen v. Larsen governs all claims here. 358 U.S. 382, 79 S.Ct. 485.

▆ Viewing all the contacts of the maritime tort in the case at bar, both with the United States and foreign countries, and giving each its appropriate weight and significance, as set forth in *Lauritzen* and *Romero*, it is apparent that such contacts as there are with the United States are insufficient for the application of the Jones Act and the maritime laws of the United States. Subjecting the facts of this case, as indicated by the affidavits and pleadings, to the criteria laid down in *Lauritzen* establishes the following: the injury occurred on the high seas, beyond the territorial jurisdiction of the United States; the ship flies the flag of Liberia; the injured plaintiff owes allegiance to Greece; the allegiance of the ship's owner is to the Republic of Panama; the employment contract was written in Greek, signed in Greece, and provided for the application of Greek law; the courts of Greece, where plaintiff resides, have not been shown to be inaccessible to plaintiff.

In point of fact, the only contacts with the United States relative to this lawsuit are confined to: (1) plaintiff's brief presence in Adak, Alaska, for emergency medical treatment; (2) the domicile of the vessel TRIKALA's former New York area agent; and (3) the residence of the president of the current New York area agent. Clearly, these few contacts are so insignificant that the court cannot justify the application of the laws of this nation in any adjudication of plaintiff's claims for negligence, unseaworthiness, or maintenance and cure; nor, as a necessary corollary, can the court justify the assumption of jurisdiction over claims under these laws.

Turning to the question of plaintiff's claim for wages and penalties, the court is confronted with plaintiff's contention that it is mandatory that the federal courts assume jurisdiction of a cause of action when it is brought under 46 U.S. C.A. §§ 596 and 597. The argument is then made that since two of plaintiff's causes of action are necessarily before the court, the court should, in the interest of justice, entertain all the counts, notwithstanding the fact that the contacts with this nation are otherwise minimal.[3]

There is a paucity of law in this Circuit regarding the question of jurisdic-

3. As authority for the proposition that the court "should accept and exercise jurisdiction over the whole matter, including the non-wage claims," plaintiff cites the following cases: Bekris v. Greek M/V Aristoteles, 437 F.2d 219 (4th Cir. 1971); Gkiafis v. Steamship Yosonas, 387 F.2d 460 (4th Cir. 1971); Heros v. Cockinos, 177 F.2d 570 (4th Cir. 1949); Heredia v. Davies, 12 F.2d 500 (4th Cir. 1926; Lascaratos v. S/T Olympic Flame, 227 F.Supp. 161 (E.D. Penn.1964).

tion under 46 U.S.C. §§ 596 and 597.[4] Only the Fourth Circuit has addressed this issue on any recurring basis, and there the law appears to be well settled that jurisdiction is mandatory where a *good faith* wage claim exists. Elefteriou v. Tanker Archontissa, 443 F.2d 185 (4th Cir. 1971); Gkiafis v. Steamship Yiosonas, 387 F.2d 460 (4th Cir. 1967); The Fletero v. Arias, 206 F.2d 267 (4th Cir. 1953), certiorari denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953); Heros v. Cockinos, 177 F.2d 570 (4th Cir. 1949); Lakos v. Saliaris, 116 F.2d 440 (4th Cir. 1940); Bekris v. M/V Aristoteles, 318 F.Supp. 1327 (E.D.Va. 1969), aff'd 437 F.2d 219 (4th Cir. 1971); Malanos v. Marsuerte Compania Naviera, S.A., 259 F.Supp. 646 (E.D. Va.1966); Giatilis v. The Darnie, 171 F.Supp. 751 (D.C.Md.1959); and Spero v. Steamship The Argodon, 150 F.Supp. 1 (E.D.Va.1957). The Second Circuit also appears to subscribe to this interpretation of the requirements placed upon the federal courts by sections 596 and 597. Monteiro v. Sociedad Maritma San Nicolas, S.A., 280 F.2d 568 (2nd Cir. 1960).[5] However, the Third Circuit has taken the opposite view. The Estrella, 102 F.2d 736 (3rd Cir. 1938), cer-

tiorari denied, *sub nom.* Myklebust v. Meidell, 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1055 (1939).[6] The few commentators who have concerned themselves with this controversy have enthusiastically endorsed the position of the Fourth and Second Circuits. Gilmore and Black, The Law of Admiralty, 391, 392 (1957); Bickel, "The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty," 35 Cornell L.Q. 12, 22–26 (1949).

■ After thoroughly reviewing the legislative history of 46 U.S.C.A. § 596 *et seq.* and the various interpretations thereof, it is the opinion of this court that Congress did not intend to make it incumbent upon the federal courts to assume jurisdiction of a cause of action brought under these statutes merely because wages are *claimed* to be owing to a foreign seaman after he has been discharged within the United States. Rather, where, as here, the contacts with this country are otherwise minimal, as determined by the test established in the *Lauritzen* case, and where the defendant denies that such wages are owing, then the plaintiff must go forward with the evidence in order to establish that the wage claim is made in *good faith*. A

---

4. The only case which this court has been able to find emanating from within the Ninth Circuit relevant to this issue is the case of *The Prahova*, 38 F.Supp. 227 (S.D.Cal.1941), wherein the trial judge opined that, under 46 U.S.C.A. § 597 "(i)t is . . . probable that the court has no discretion in the matter but must exercise jurisdiction." *Id.* at 228.

5. Counsel for defendants has placed great emphasis upon the case of Brillis v. Chandris (U.S.A.) Inc., 215 F.Supp. 520 (S.D.N.Y.1963), a case strikingly similar to the case now before this court. Therein, the court declined jurisdiction of actions brought under the Jones Act and 46 U.S.C.A. §§ 596 and 597 on the basis of insufficient contacts and forum non conveniens. The trial court did not even concern itself with the question of mandatory/discretionary jurisdiction for wage claims and the opinion does not reflect whether this issue was ever raised by the plaintiff in that case.

However, this does not appear to be the rule within the Second Circuit. See, Monteiro v. Sociedad Maritma San Nicolas, S. A., 280 F.2d 568 (2nd Cir. 1960), wherein the court said:

It is thus reasonable to conclude that when Congress added a direction that the courts of the United States "shall be open" for enforcement of the rights conferred upon "seamen on foreign vessels," it meant they should not only be but stay open. *Id.* at 573.

6. The *Estrella* case has been distinguished by a much later district court decision on the basis that it involved a treaty under which the foreign consul for the plaintiff's government was given jurisdiction over wage claims concurrent with that of federal courts. Lascaratos v. S/T Olympic Flame, 227 F.Supp. 161, 162 (E.D.Pa.1964). In the *Lascaratos* case, the district court held that acceptance of jurisdiction was mandatory, not discretionary citing cases from the Fourth and Second Circuits.

contrary interpretation would subject the act to grave abuse. For instance, it would take a particularly dull attorney not to be able to find at least some basis for a wage claim, however tenuous, and tack to that claim a prayer for compensation for personal injuries sounding in negligence, unseaworthiness, and maintenance and cure. The contacts may be wholly lacking under the *Lauritzen* doctrine; but with a small wage claim attached plaintiff may very well argue, as was done in the instant case, that jurisdiction over the other causes of action should be assumed.[7] The sole purpose of the wage claim, then, would be to serve merely as a wedge into forums which are otherwise closed to the prospective litigants because of the complete lack of contacts with this country.[8] Once access is gained, the court could very well find itself primarily engaged in the task of interpreting a contract of employment written in a foreign language and negotiated and signed in a foreign country and applying foreign law to a claim which arose completely outside of the United States, exclusively between foreign nationals, with the only witnesses being of foreign citizenship.

It is to preclude such abuse that this court requires plaintiff to establish that the claim is brought in good faith once such claim has been controverted.[9] Here plaintiff has failed to submit to the court any evidence which might tend to fulfill this require-

ment. Even the complaint is devoid of any allegations of fact which might tend to support the bare conclusory statement that wages are owing. Further, this complaint is verified only by plaintiff's attorney and simply on his "information and belief," which, while acceptable pleading, hardly is sufficient to establish that the wage claim is made in good faith once there has been a denial by defendant that wages are owing. Accordingly, this court will also decline to exercise jurisdiction under 46 U.S.C.A. § 596 *et seq.*

The court is then left with the consideration as to whether jurisdiction should be accepted on the basis that Liberian law or any other appropriate foreign law is applicable. However, the facts which lead this court to the conclusion that the Jones Act and the general maritime law of the United States should not be applied in the resolution of this controversy also compel this court to conclude that this is not a convenient forum in which to litigate the question of liability under foreign law. Zouras v. Menelaus Shipping Co., 336 F.2d 209 (1st Cir. 1964).

Since the above holdings are dispositive of the entire case, this court need not decide defendants' other contentions in support of this motion.

Defendants' motion to dismiss is hereby granted. Judgment will be entered accordingly.

---

7. It is noted that the wage claim which serves as plaintiff's touchstone with this court is for $125.00, whereas his personal injury claim is for approximately $36,500.00.

8. One scholarly text points out to students of admiralty that it will be helpful to join a wage claim with a personal injury claim when they are seeking to persuade court to exercise its discretionary jurisdiction over the nonwage claim.

Gilmore and Black, The Law of Admiralty 391 (1957).

9. While no answer was filed in this case, defendants instead electing to bring this motion to dismiss, plaintiff's allegation that wages are owing was sufficiently controverted by their denial in their response to plaintiff's request for admissions of fact and genuineness of documents.