George DORIZOS, Plaintiff,

v.

LEMOS AND PATERAS, LTD., et al., Defendants.

Civ. A. No. 76–574–T.

United States District Court,
S. D. Alabama, S. D.

Sept. 27, 1977.

Ross Diamond, III, Mobile, Ala., for plaintiff.

Oliver J. Latour, Jr., Mobile, Ala., for defendants.

## ORDER

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This matter came on for consideration by the court on September 2, 1977, requesting the Court to dismiss and/or decline jurisdiction.

The defendant claims as grounds for the motions to dismiss that (1) plaintiff's employment contract contains a choice of forum clause requiring plaintiff to proceed in the courts of Greece, the country of his residence, and (2) the United States District Court for the Southern District of Alabama is not a convenient forum for the litigation of the claim asserted in this suit and should decline jurisdiction on the basis of forum non conveniens.

The plaintiff submits that the forum clause is not controlling and that any action by the Court in the present case is premature as there remain many questions pertaining to the nature and extent of the defendant's contacts with the United States.

## FINDINGS OF FACT

1. George Dorizos was a domiciliary of Greece, serving aboard the SS PETINGO in the capacity of helper to the Chief Steward on or about October 11, 1976, when he was injured aboard and while said vessel was docked at the Alabama State Docks, Mobile, Alabama.

2. The SS PETINGO was owned by Anthemis Shipping Co., Ltd., a Panamanean corporation, none of whose stockholders, officers or directors are citizens or resident aliens of the United States of America.

3. Lemos & Pateras, Ltd., Shipbrokers, is a British corporation organized and existing under the laws of the United Kingdom. None of the directors, officers or stockholders of Lemos & Pateras, Ltd., are citizens or resident aliens of the United States of America.

4. Lemos & Pateras (HELLAS) S.A. is a Greek corporation with its home office and principal place of business being in Piraeus, Greece. None of its stockholders, officers or directors are citizens or resident aliens of the United States of America.

5. At the time in question, George Dorizos was serving aboard the SS PETINGO pursuant to a contract with Lemos & Pateras (HELLAS) as agents for the Captain of the SS PETINGO.

6. The SS PETINGO was, since December 1975, a Greek flag vessel with her home port being Piraeus, Greece.

7. Lemos & Pateras, Ltd. was not, in October 1976, doing business within the State of Alabama and has no office in the United States of America.

8. With two exceptions, all of the crew members of the SS PETINGO were, at the time in question, Greek nationals. The two crew members excepted were both Indian nationals.

9. From October 11, 1975, through September 3, 1976, the SS PETINGO had called at ports or facilities within this country only once. On May 22, 1976, the ship visited Belle Chase, Mississippi.

10. Plaintiff repatriated to Greece once he was discharged from the hospital and is still in Greece.

## CONCLUSIONS OF LAW

The initial question presented by the briefs of the parties involves the enforcement of a forum clause contained in the employment contract. The clause would require that this cause proceed in the Greek courts. The Supreme Court of the United States has held, in *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that the correct doctrine to be followed by the Federal Courts sitting in admiralty is that forum clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable un-

der the circumstances." Inasmuch as there has been no showing of facts to the contrary and the discussion herein does not disclose any, this Court finds that the forum clause is not unreasonable.

■ On the matter of choice of law, in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 92 L.Ed. 1254 (1953), the Supreme Court established certain criteria which govern the choice of law in maritime torts. The Court, in *Hellenic Lines, Ltd. et als, v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), added another criteria, "base of operations", while, at the same time, found the *Lauritzen* test not to be a mechanical one and also that it was not intended to be exhaustive. The guidelines set forth in *Lauritzen* and *Rhoditis* reflect the policy that United States law will be imposed in maritime matters only when the case is shown to have such a substantial contact with the United States that its law should apply over that of a foreign country.

■ The present case is connected with the United States because the injury took place aboard the vessel while it was docked at the Alabama State Docks. Note that the Court in *Lauritzen* stated:

"But the territorial standard is so unfitted to an enterprise conducted under many territorial rules and under none that it usually is modified by the more constant law of the flag."

It was also in the United States that the plaintiff received medical treatment immediately after he sustained the injury. He was hospitalized temporarily but has since returned to Greece.

The second factor of *Lauritzen* is the law of the flag which, in this case, is Greek. The *Lauritzen* Court said that the law of the flag supersedes the territorial principle (place of the wrong). The findings of fact in this case make it possible to clearly distinguish the present case from *Rhoditis.* The Fifth Circuit, in *Yohanes v. Ayers Steamship Co., Inc.,* 451 F.2d 349 (5th Cir. 1971), cert. denied 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118, under facts similar to those in the present case, affirmed the District Court's ruling declining general maritime jurisdiction on the grounds of forum non conveniens and its conclusion that the Jones Act was not applicable. See *Anastasiadis v. S/S Little John,* 346 F.2d 281 (5th Cir. 1965), cert. denied 384 U.S. 920, 86 S.Ct. 1368, 16 L.Ed.2d 440 (1966) and *Tamboris v. Kainis Compania Maritima, S. A.,* 439 F.2d 1131 (5th Cir. 1971).

The third factor is the allegiance or domicile of the injured person. Here the seaman is a Greek domiciliary.

The fourth factor, the allegiance of defendant shipowner, points away from United States contacts.

The fifth factor, the place of the contract, points to Greek law as the plaintiff signed the contract in Piraeus, Greece, according to the contract provided by the defendant.

The sixth factor concerns the inaccessibility of the foreign forum. The plaintiff is now in Greece and the defendants involved all point to the applicability of foreign law. There seems to be no disadvantage to the plaintiff pursuing his remedy in Greece.

The last factor of *Lauritzen* is the law of the forum. The slight connection with the United States does not warrant the application of the law of the United States.

The *Rhoditis* addition, "base of operations", also does not persuade this Court to apply United States law, the Court relying on the findings of fact.

The Supreme Court, in *Romero v. International Terminal Operating Company,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), affirmed the *Lauritzen* test and applied it to an action brought by a foreign seaman under the general maritime law of the United States. The Court therein stated:

"The broad principles of choice of law and the applicable criteria of selection set forth in *Lauritzen* were intended to guide courts in the application of maritime law generally. Of course, due regard must be had for the differing interests advanced by varied aspects of maritime law. But the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal

injury, admit of no rational differentiation of treatment for choice of law purposes. Thus the reasoning of *Lauritzen v. Larsen* governs all claims here." 358 U.S. 382, 79 S.Ct. 485.

Due regard for the relevant factors enumerated in *Lauritzen* and *Rhoditis* having been applied, this Court finds that the plaintiff's claims do not require the application of United States law.

■ As to the forum non conveniens issue, it has long been held that this issue is resolved at the discretion of the judge. However, the Court, in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), elaborated the criteria for determining whether the doctrine of forum non conveniens should apply. These factors include: (1) the private interest of the litigants; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) possibility of viewing the premises if a view would be appropriate; and (5) all other practical problems that make a trial of a case easy, expeditious and inexpensive.

■ In the case at bar, the vessel is a Greek flag vessel, the owners of the vessel are foreign, there are no defendants substantially involved with the United States, the plaintiff is in Greece, the crew members are almost totally Greek nationals, a trial in the United States would require an interpreter for those witnesses (including plaintiff) from Greece or elsewhere and the expense of bringing the witnesses and plaintiff from foreign countries is greater than if the few witnesses and records here, if indeed necessary, were transported from the United States.

Having determined that the Jones Act and the general maritime law of the United States should not be applied in this controversy, this Court is compelled to conclude that, consistent with the discussion above, this is not a convenient forum in which to litigate the issues presented by the present case.

■ The only issue remaining to be dealt with involves the payment of wages to the plaintiff, an issue not referred to in the memorandums of counsel for the parties but one contained in the amended complaint and spoken to in oral arguments on the instant motion. The claim is made under 46 U.S.C.A. § 596. A search for Fifth Circuit law has failed to uncover any decisions on the controversy which concerns the mandatory jurisdiction of wage claims under Section 596 and a requirement that the wage claim be made in good faith. However, it was held in *Mihalinos v. Liberian S. S. Trikala,* 342 F.Supp. 1237 (D.C.S.D.Cal. 1972), in a thorough decision, that a wage claim made under Section 596 was subject to the requirement of good faith and the Court stated further:

". . . it is the opinion of this court that Congress did not intend to make it incumbent upon the Federal Courts to assume jurisdiction of a cause of action brought under these statutes merely because wages are *claimed* (emphasis by the court) to be owing to a foreign seaman after he has been discharged within the United States. Rather, where, as here the contacts with this country are otherwise minimal, as determined by the test established in the *Lauritzen* case, and where the defendant denies that such wages are owing, then the plaintiff must go forward with the evidence in order to establish that the wage claim is made in *good faith.* A contrary interpretation would subject the act to grave abuse. For instance, it would take a particularly dull attorney not to be able to find at least some basis for a wage claim, however tenuous, and tack to that claim a prayer for compensation for personal injuries sounding in negligence, unseaworthiness, and maintenance and cure. The contacts may be wholly lacking under the *Lauritzen* doctrine; but with a small wage claim attached, plaintiff may very well argue as was done in the instant case, that jurisdiction over the other causes of action should be assumed. The sole purpose of the wage claim, then, would be to serve merely as a wedge into

forums which are otherwise closed to the prospective litigants because of the complete lack of contacts with this country. . . . Even the complaint is devoid of any allegation of fact which might tend to support the bare conclusory statement that wages are owing. Further this complaint is verified only by plaintiff's attorney and simply on his 'information and belief,' which, while acceptable pleading, hardly is sufficient to establish that the wage claim is made in good faith once there has been a denial by the defendant that wages are owing."

This Court notes that the defendant has denied that wages due the plaintiff have not been paid at this time. Furthermore, in plaintiff's deposition, taken November 19, 1976, while plaintiff was in the hospital, at pages 39 and 40, the question was asked by plaintiff's attorney:

Q. "Now, have you been paid all the wages indicated as due on that pay voucher?

The Translator: No, he has not received this. That is why he has this paper. He is to receive it when he goes to Greece, he says."

This answer shows, at least impliedly so, that the plaintiff did not expect wages to be paid him while he was in the hospital or that he consented to the non payment or to the delay if there indeed was a delay as far as he was concerned. *In Peterson et al. v. S. S. Wahcondah et al.,* 235 F.Supp. 698 (D.C.E.D.La.1964) the Court found that:

"However, the lien for penalty wages arises under 46 U.S.C.A. § 596 only where there has been a refusal to pay regular wages when due. That statute is designed to prevent 'arbitrary refusals to pay wages, and to induce prompt payment when payment is possible.'"

Here there is no evidence of a refusal. Likewise there is no evidence of a demand for payment. Considering the fact that the plaintiff was well taken care of while he was in the hospital and that he left for Greece immediately upon his release from the hospital, there seems no need that the injured seaman be paid while he is in bed only to have the payment lay hazardously in the room while the patient receives treatment.

Additionally, it should be noted that the amendment to the complaint adding the claim for wages under Section 596 was made four days after oral arguments were held. The original complaint, filed October 19, 1976, prayed only for recovery of unearned wages instead of the claim under Section 596 also. At this point the Court wishes to declare that it does not, under any circumstances, wish to infer, nor does this Court believe, that the counsel for plaintiff is attempting to use his complaint in an unprofessional manner in an effort to require jurisdiction of this cause by the Court. This Court wishes merely to establish, in this case, that the plaintiff was not left in a foreign country, wanting for food and shelter despite a demand for and the refusal of any payment of money owed him. To the contrary, the information supplied this Court points to the fact that the plaintiff didn't ask for nor was he refused payment of wages owed him while he was in the United States. This being the finding, the Court concludes that the complaint does not require mandatory acceptance of the wage claim as the facts do not sufficiently show that the claim for wages is made in good faith as determined under *Mihalinos.*

Accordingly, the Court, having found that: (1) the forum clause deserves enforcement; (2) the choice of law criteria show United States law doesn't control; (3) the doctrine of forum non conveniens should be invoked by the Court, and; (4) the wage claim is not sufficiently evidenced to require mandatory jurisdiction of that issue, rules that the motion to dismiss moved for by the defendants should be, and hereby is, GRANTED.